[No. 68809. Second Dist., Div. Three. Oct. 22, 1986.]

SAMUEL RODRIGUEZ, Plaintiff and Appellant, v.
INGLEWOOD UNIFIED SCHOOL DISTRICT,
Defendant and Respondent.

708

COUNSEL

Joseph L. Drociak and David C. Tardiff for Plaintiff and Appellant.

George Nicholson, Myron Moskovitz, Arne Werchick and Victoria De Goff as Amici Curiae on behalf of Plaintiff and Appellant.

Deems & Carpenter and Martin L. Carpenter for Defendant and Respondent.

OPINION

KLEIN, P. J.—

## INTRODUCTION

We are instructed on retransfer to reconsider our prior opinion in this case in the light of the expanded vistas of governmental tort liability set forth in *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799 [205 Cal.Rptr. 842, 685 P.2d 1193] and *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780 [221 Cal.Rptr. 840, 710 P.2d 907].

For reasons hereinafter discussed, *Peterson* does not apply to our fact situation, because it is a "dangerous condition" case and Rodriguez cannot bring his facts within that concept. *Lopez* provides a basis for helpful analogies. However, there remains a glaring difference between the Rodriguez case and *Lopez;* statutory liability is clear in *Lopez* and nonexistent in *Rodriguez*.

## FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez's first amended complaint alleges he was a student at Inglewood High School, and while on the campus on September 24, 1981, he was stabbed by a nonstudent third party assailant. He further alleges Inglewood High School had a long history of acts of violence involving dangerous weapons and that the district had sufficient time to have provided adequate security and protection against such acts of violence, and negligently failed to do so.

The district demurred on the grounds, inter alia, the complaint did not state a cause of action because it is immune from liability for failure to provide adequate security and protection against criminal acts pursuant to Government Code section 845,[1] and no statutory cause of action is alleged for a dangerous condition of public property which would give rise to liability pursuant to section 835.[2]

The demurrer was sustained without leave to amend and a judgment of dismissal was entered. The appeal followed.

## DISCUSSION

1. *Standards for determination of duty before consideration of immunity.*

Because "the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the

---

[1]Government Code section 845 states: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."
All further code references are to the Government Code unless otherwise specified.

[2]Section 835 provides in pertinent part: "[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, . . .: [¶] . . . . [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

plaintiff" (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894]), we must first consider whether a school district has a duty to protect students from third party assaults occurring on the campus. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 22-23 [192 Cal.Rptr. 233, 664 P.2d 137].)

■ In general terms, "[i]t is a fundamental principal of tort law that one is liable for injuries caused by a failure to exercise reasonable care. Hence whenever a person is in such a position with regard to another that, if he did not use due care *in his own conduct,* he would cause injury or danger to another, a duty arises to use due care to avoid such danger. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) ■ Whether a 'duty' exists in a particular case is a question of law. '[L]egal duties are . . . merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.' (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) 'Duty' is '"an expression of the sum total of those *considerations of policy* which lead the law to say that the particular plaintiff is entitled to protection."' (Prosser, Law of Torts [3d ed.] at pp. 332-333.)' (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) The most important policy consideration is the foreseeability of the harm: . . ." (*Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 307-308 [191 Cal.Rptr. 704], italics added.)

■ However, where a complaint alleges injuries resulting from the *criminal acts of third persons* as here, "the common law, reluctant to impose liability for *nonfeasance,* generally does not impose a duty upon a defendant to control the conduct of another (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 [271 P.2d 23]; Rest.2d Torts (1965) § 315), or to warn of such conduct (Rest.2d Torts, *supra,* § 314, com. c; Prosser, Law of Torts (4th ed. 1971) § 56, p. 341), unless the defendant stands in some *special relationship* either to the person whose conduct needs to be controlled, or to the foreseeable victim of such conduct. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 435; *Buford* v. *State of California, supra,* 104 Cal.App.3d at p. 819; Rest.2d Torts, *supra,* §§ 315-320.)" (*Johnson* v. *County of Los Angeles, supra,* 143 Cal.App.3d at p. 308, italics added.)

Witkin instructs that the common law concept of special relationships covers: landowner or possessor and person coming on the land; manufacturer or supplier of goods and buyer or user; vendor, lessor, or contractor and purchaser, lessee or owner of real property. Witkin further comments that the Restatement Second, section 314A, "refers to such additional relationships [giving rise to affirmative duties] as common carrier and passenger

. . ., innkeeper and guest . . ., and a person who is required by law to take, or who voluntarily takes, custody of another under circumstances that deprive the other of his normal opportunities for protection." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 555, p. 2822.)

*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d 799, involved a landowner-invitee special relationship. *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], added psychotherapists and patients to the list, and other cases have served to enlarge the doctrine. (See *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938, 944-945 [41 Cal.Rptr. 508], special relationship when sheriff promised to warn threatened woman of the release of a particular prisoner; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 780 [139 Cal.Rptr. 82], special relationship where relationship of dependency between the parties; see also *Pamela L.* v. *Farmer* (1980) 112 Cal.App.3d 206 [169 Cal.Rptr. 282]; Rest.2d Torts, § 314A, com. *b.,* p. 119; and the following decisions imposing a duty to protect on proprietors of: bowling alleys, *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793]; restaurants, *Winn* v. *Holmes* (1956) 143 Cal.App.2d 501 [299 P.2d 994]; apartment houses, *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798 [142 Cal.Rptr. 487]; hospitals, *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653].)

The above discussed relationships held to be special are not a complete list, but are exemplary. Whether a relationship is determined to be special for the purpose of imposing an affirmative duty on one party to act on behalf of the welfare of another, will depend on a variety of factors not yet fully defined and, to no small extent, on important policy considerations.

In *Lopez,* the court recognized "that some relationships by their very nature are 'special' ones giving rise to an 'initial duty' to come to the aid of others, . . ." (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at p. 789.) It found certain "characteristics of public transportation, *along with the duty of utmost care and diligence imposed by Civil Code section 2100,* [to] provide a more than ample basis for finding a special relationship between common carriers and their passengers." (*Ibid.,* italics added.)[3]

a. *Duty found to exist between school district and student.*

It is incumbent upon us to analyze the characteristics of public education, in the light of recent statutory pronouncements of students' rights to safe

[3]Civil Code section 2100 provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

schools, to determine whether a special relationship should be found between school district and student so as to impose an affirmative duty to provide some kind of protection.

Major factors to consider include the compulsory character of school attendance, the expectation and reliance of parents and students on schools and staff for safe buildings and grounds, and the importance to society of the learning activity which is to take place in public schools.

Education Code section 48200 et seq., part of the Compulsory Education Law, compels youngsters to attend school. It states in part: "Each person between the ages of 6 and 16 years . . . is subject to compulsory full-time education. . . . [and] shall attend the public full-time day school . . ." for the length of the school day as designated by the governing board of the school district in which the residency of the parent or legal guardian is located.

Further, article I, section 28, subdivision (c) of the California Constitution (section 28, subdivision (c)), which is part of Proposition 8 and known as The Victim's Bill of Rights, was approved by the electorate in 1982 and provides: *"Right to Safe Schools.* All students and staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful."

Also, Penal Code section 627, enacted in 1982, states, inter alia, "[i]t is the intent of the Legislature in enacting this chapter to promote the safety and security of the public schools by restricting and conditioning the access of unauthorized persons to school campuses *and to thereby implement the provisions of Section 28 of Article I of the California Constitution* which guarantee all students and staff the inalienable constitutional right to attend safe, secure, and peaceful public schools."[4] (Italics added.)

---

[4]Penal Code section 627 reads: "(a) The Legislature finds the following: [¶] (1) Violent crimes perpetrated on public school grounds interfere with the education of students and threaten the health and safety of teachers, other employees, and students. [¶] (2) Many serious crimes of violence are committed on school grounds by persons who are neither students nor school employees and who are not otherwise authorized to be present on school grounds. [¶] (3) School officials and law enforcement officers, in seeking to control these persons, have been hindered by the lack of effective legislation restricting the access of unauthorized persons to school grounds and providing appropriate criminal sanctions for unauthorized entry. [¶] (b) The Legislature declares that the purpose of this chapter is to safeguard the teachers, other employees, students, and property of public schools. The Legislature recognizes the right to visit school grounds for legitimate nonviolent purposes and does not intend by this enactment to interfere with the exercise of that right. [¶] (c) The Legislature finds and declares that a disproportionate share of crimes committed on school campuses are committed by persons who are neither students, school officials, or staff, and who have no lawful business on the school grounds. [¶] *It is the intent of the Legislature in enacting this chapter* to promote the safety and security of the public schools by restricting

In 1985 the Legislature enacted the new Interagency School Safety Demonstration Act found in Education Code sections 32260-32296. In section 32261 thereof, the Legislature reiterated its recognition "that all pupils enrolled in the state public schools have the inalienable right to attend classes on campuses which are safe, secure, and peaceful."[5]

We take due note of the recent statement of the Supreme Court found in *In re William G.* (1985) 40 Cal.3d 550, 563 [221 Cal.Rptr. 118, 709 P.2d 1287]. The case deals with the balancing of students' privacy rights with governmental interests in promoting a safe learning environment, and the court made the observation that "the right of all students to a school environment fit for learning cannot be questioned. *Attendance is mandatory* and the aim of all schools is to teach. Teaching and learning cannot take place without the physical and mental well-being of the students. *The school premises, in short, must be safe and welcoming.*" (*Ibid.*, italics added.)

■ Based on prior case law and the characteristics of public education along with recent statutory pronouncements, we readily come to the conclusion that a special relationship is formed between a school district and its students so as to impose an affirmative duty on the district to take all reasonable steps to protect its students.

■ However, a duty owed is only part of the equation for recovery of damages for injuries sustained as a result of violent acts by third parties. *There must also exist statutory liability.* None appears here.

2. *No statutory liability applicable here.*

Having properly placed the duty horse before the immunity cart (*Williams v. State of California, supra,* 34 Cal.3d at p. 22), and determined a duty

and conditioning the access of unauthorized persons to school campuses *and to thereby implement the provisions of Section 28 of Article I of the California Constitution* which guarantee all students and staff the inalienable constitutional right to attend safe, secure, and peaceful public schools. It is also the intent of the Legislature that the provisions of this chapter shall not be construed to infringe upon the legitimate exercise of constitutionally protected rights of freedom of speech and expression which may be expressed through rallies, demonstrations, and other forms of expression which may be appropriately engaged in by students and nonstudents in a campus setting." (Italics added.)

[5]Education Code section 32261 provides: "The Legislature hereby recognizes that all pupils enrolled in the state public schools have the inalienable right to attend classes on campuses which are safe, secure, and peaceful. . . ., the Legislature further recognizes that school crime, vandalism, truancy, and excessive absenteeism are significant problems on far too many school campuses in the state. [¶] *The Legislature hereby finds and declares that the establishment of an interagency coordination system is the most efficient and long-lasting means of resolving school and community problems of crime, vandalism, and truancy.* [¶] *It is the intent of the Legislature in enacting this chapter to encourage* school districts, county offices of education, and law enforcement agencies *to develop and implement* interagency strategies, programs, and activities *which will improve* school attendance and reduce the rates of school crime and vandalism." (Italics added.)

is owed by a school district to protect students on campus from violent assaults by third parties, we still find no cause of action alleged under the facts set forth in Rodriguez's complaint and the controlling state of the law.

Section 815 states in pertinent part: *"Except as otherwise provided by statute:* [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity . . . ."* (Italics added.)

*Lopez* further instructs, "in California, *all government tort liability must be based on statute* (*Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 653 [161 Cal.Rptr. 140].) However, the statute providing for liability need not be part of the Tort Claims Act itself. (Gov. Code, § 811.8; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.8, p. 39.) Nor must the statute provide on its face that it is applicable to public entities. 'Rather, a liability is deemed "provided by statute" if a statute defines the tort in general terms.' (*Levine* v. *City of Los Angeles* (1977) 68 Cal.App.3d 481, 487 [137 Cal.Rptr. 512]; see also *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 933 [101 Cal.Rptr. 568, 496 P.2d 480]; and Van Alstyne, Cal. Government Tort Liability Practice, *supra,* at p. 38.)" (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at p. 785, fn. 2, italics added.)

Therefore, we consider a number of statutes that have been proffered as providing a basis for governmental liability.

a. *No cause of action based on a dangerous condition of public property.*

We were also referred to *Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d 799, in the retransfer order, which we have analyzed in an effort to ascertain whether Rodriguez could conceivably state a cause of action based on section 835, a dangerous condition of public property.

A dangerous condition is statutorily defined as "a condition of property that creates a substantial . . . risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

In *Peterson,* a female college student filed an action against the San Francisco Community College District for damages. Her complaint alleged she was invited onto the campus and paid tuition and a parking fee. While going up a stairway on the parking lot, she was assaulted by an unidentified

male who jumped from behind the thick foliage adjoining the stairway. She further alleged the college district's knowledge of prior similar assaults, and its efforts to protect users induced her to rely on such protective measures. By virtue of the special relationship that was thus created between her and the college district, she claimed it had a duty to protect her and/or to warn her of danger.

Her suit was based on section 835 liability of a public entity for maintaining a dangerous condition of property, which together with the criminal act of a third party, caused her injuries.

The college district's demurrer was sustained without leave to amend. The *Peterson* court ruled a special relationship existed; the college district, as the possessor of the land, held it open to the public for business purposes, and the plaintiff was a student invitee. The college district therefore had a *duty* to exercise due care to protect students from reasonably foreseeable assaults on the campus, and the statutory liability was found in section 835. (*Id.*, at pp. 808-809.)

*Peterson* found the college district was immune from liability for failure to provide adequate police protection under section 845. However, it was not immune for failure to warn its students of known dangers posed by criminals on the campus. (*Id.*, at p. 815.)

"Dangerous condition" has been defined many times by the state's reviewing courts. In commenting on section 835's predecessor statute of like language and import (see *Hayes* v. *State of California* (1974) 11 Cal.3d 469, 472, fn. 2 [113 Cal.Rptr. 599, 521 P.2d 855]), the court in *Jones* v. *Czapkay* (1960) 182 Cal.App.2d 192, 203 [6 Cal.Rptr. 182], held over 25 years ago that a "dangerous condition" of property means property which is dangerous or defective either structurally or by way of its general use and operation. "The section has always been considered to mean just what it says, that it is the *condition of property* that determines the waiver of the immunity and not the condition of persons on that property." (*Ibid.*)

In *Hayes* v. *State of California, supra*, 11 Cal.3d at page 471, plaintiffs were assaulted on a public beach owned and maintained by the University of California at Santa Barbara. The plaintiffs sought to amend their complaint to allege a "dangerous condition" of public property and failure to warn. In affirming the decision of the trial court not to allow an amendment following a demurrer, the court held that "[l]iability for injury caused by a dangerous condition of property has been imposed when an unreasonable risk of harm is created by a *combination* of defect in the property and acts of third parties. [Citations.] However, courts have consistently refused to

characterize harmful third party conduct as a dangerous condition—absent some concurrent contributing defect in the property itself." (*Id.*, at p. 472.) (See also *Stone* v. *State of California* (1980) 106 Cal.App.3d 924, 928-929 [165 Cal.Rptr. 339]; *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 496-497 [147 Cal.Rptr. 898]; *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484 [135 Cal.Rptr. 296].)

In recent years, case law reflects an abandonment of the concept of a "physical defect," or that a condition must be inherently dangerous. "The substantial risk of injury that is essential to characterizing a condition as dangerous need not exist as a continuous aspect of the property. It may arise only at certain times or under certain conditions that *combine* with the physical attributes of the property to make it hazardous to reasonably careful users." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar Supp. 1985) § 3.8, p. 57, italics added; see, e.g., *Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789 [198 Cal.Rptr. 208]; *Erfurt* v. *State of California* (1983) 141 Cal.App.3d 837 [190 Cal.Rptr. 569].)

In *Peterson* v. *San Francisco Community College Dist.*, *supra*, 36 Cal.3d at page 812, plaintiff alleged the property was in a dangerous condition because of thick and untrimmed trees around the parking lot. Obviously, untrimmed trees are not necessarily a dangerous condition by themselves, but could become so when the situation lends itself to known dangerous or criminal activity. The *Peterson* court held a dangerous condition was alleged in light of the college district's knowledge of prior criminal attacks in the same area and failure to take reasonable protective measures including trimming the foliage or warning of the danger. (*Id.*, at p. 814.)

While *Peterson* distinguishes *Hayes* on the applicability and effectiveness of a warning of danger, *Peterson* nonetheless still expresses the view that students "can reasonably expect that the premises will be free from *physical defects* and that school authorities will also exercise reasonable care to keep the campus free from *conditions* which increase the risk of crime." (*Peterson* v. *San Francisco Community College Dist.*, *supra*, 36 Cal.3d at p. 813, italics added.)

In Rodriguez's complaint, we have the bare allegations that he was stabbed by a nonstudent while he was on the campus. No *physical defects* or *conditions* of the campus are alleged which would increase the risk of crime. The allegation that other such acts occurred on the campus prior to his assault adds notice but does not bring his factual situation within the legal parameters of a dangerous condition to state a cause of action. Further, it

is difficult to imagine how the few paragraphs of charging allegations could be strengthened with adequate facts to state a cause of action.

*Swaner* v. *City of Santa Monica, supra,* 150 Cal.App.3d 789, comes closest to providing such a rationale. There, the complaint alleged two persons were injured by a vehicle while lying on a beach about 2 a.m. near an adjacent parking lot. The beach and parking lot were owned by public entities. The parking lot had no fence or barriers between it, the highway and the beach, and this fact was alleged to have constituted a dangerous condition of public property. There was the further allegation that the defendants knew of the situation and that other persons had been injured in a like manner.

The holding in *Swaner,* which came out of this division, was based on its unique facts, and a line is thereby drawn. It appears all the relevant cases are substantially controlled by their distinct factual situations. The physical condition of the public property under scrutiny in *Swaner* was the parking lot's *lack* of a fence or other barrier to prevent vehicles from gaining access to the beach.

Rodriguez's further allegations that the district "failed to prevent students and other persons from bringing weapons onto the school grounds when such precaution could have been taken by defendants at a minimal expense of money and time . . .[, and] failed to prevent persons without legitimate business on the campus from gaining access to the school grounds[,]" add nothing to establish a dangerous condition.

Had *Swaner* involved the fact situation of armed criminals walking onto the beach from the parking lot at 2 a.m. and assaulting beach users, the case result would not be the same. No simple fence or barrier separating beach and parking lot "at a minimal expense of money and time" would have prevented such persons from gaining access to the beach. The latter situation presents the issue of providing police protection service for which a public entity is immune under section 845.

On the other hand, if Rodriguez's complaint alleged Rodriguez was injured by vehicles entering onto the campus due to the lack of a fence or barrier and thereafter racing around, which activity was known to the district, *Swaner* might apply. But Rodriguez's complaint sets forth the infinitely more difficult fact situation to control—students and nonstudents with easily concealed weapons coming onto the campus and assaulting innocent students.

Rodriguez's allegations clearly have nothing to do with the physical *condition* of the property, or the misuse of it in any way, but relate only to

"the condition of persons on that property." (*Jones* v. *Czapkay, supra,* 182 Cal.App.2d at p. 203.)

■ "In general, '[w]hether a given set of facts and circumstances creates a dangerous condition is usually a question of fact and may only be resolved as a question of law if reasonable minds can come to but one conclusion.' (*Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24, 30 [90 Cal.Rptr. 541]; *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221, 228 [123 Cal.Rptr. 338].) (Fn. omitted.)" (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 810.)

However, in a footnote, *Peterson* acknowledges the existence of section 830.2 which sets forth the criteria for a court to conclude as a *matter of law* that a condition is not dangerous within the meaning of section 830 as follows: "'A condition is not a dangerous condition within the meaning of this chapter if the trial *or appellate court,* viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.' (§ 830.2)." (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 810, fn. 9, italics added.)

■ We hereby exercise the appellate prerogative and find as a matter of law a dangerous condition in Rodriguez's case is nonexistent and therefore section 835 cannot form the statutory basis for a cause of action against the district. Diligent amici curiae concede this point with the statement, "[w]e make no contention that Government Code section 835, does apply here."

b. *Other statutory provisions also unavailing.*

■ We are not unmindful of section 815.6 which makes a public entity liable for its failure to discharge a *mandatory duty* imposed by an enactment, be it a constitutional or charter provision, statute, ordinance, or regulation having the force of law, *that is designed to protect against the risk of a particular kind of injury.* (Van Alstyne, Cal. Government Tort Liability Practice, *supra,* § 2.41, p. 93.)

We have examined the various possibly applicable "enactments" providing for such a mandatory duty in this case and have found none. In that process, we considered Education Code section 44807 which could form

the statutory basis for a cause of action in negligent supervision, and is an example of such a mandatory duty. Education Code section 44807 states in pertinent part: "Every teacher in the public schools shall hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess."[6]

Neither the facts of Rodriguez's complaint, nor conceivable amendments thereto, support a cause of action in negligent supervision in the light of the leading case finding liability on this basis. (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747-748 [87 Cal.Rptr. 376, 470 P.2d 360]; see also *Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 807, fn. 3.)

We have found the nature of the relationship between a school district and students is a special one giving rise to an "initial duty" to come to the aid of others (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at p. 789); that conclusion is based in part on the compulsory attendance laws. (Ed. Code, § 48200 et seq.) However, those laws do not come within the contemplation of section 815.6. The compulsory attendance laws place a responsibility on parents and students to attend school, but are *not* designed to protect students against the risk of any particular kind of injury. Therefore, there is no inconsistency in our position.

*Lopez* found statutory liability in Civil Code section 2100, which requires carriers to use utmost care and diligence for the safe carriage of passengers, and expressly held the section "'otherwise provide[s]'" for liability of a public entity within the meaning of section 815. (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at p. 785, fn. 2.) Arguably, *Lopez* could also have discussed liability in contemplation of section 815.6.

 In Rodriguez's case, to the contrary, no statutory liability applies to enable a recovery. Rodriguez's injuries occurred on September 24, 1981, prior to the 1982 adoption of Proposition 8 with its safe schools provision and Penal Code section 627, and before the 1985 enactments of Education Code section 32261.

However, case and statutory pronouncements indicate the section has no retroactive effect. Assuming arguendo section 28, subdivision (c), "otherwise provides" for public entity liability within the meaning of section 815, or comes within section 815.6, *People* v. *Smith* (1983) 34 Cal.3d 251,

---

[6]We are also aware of companion section 815.2, subdivision (a), which provides for the vicarious liability of a school district for a student's injuries proximately caused by negligent failure to supervise.

260-262 [193 Cal.Rptr. 692, 667 P.2d 149], held that while parts of Proposition 8 might not be ex post facto, the proposition could not apply to proceedings arising out of offenses on or before the date it took effect, which date was June 9, 1982.

■ A statute or an amendment to a statute is not generally applied retroactively unless the legislative intent to that effect is clear. (*City of Redlands* v. *Sorensen* (1985) 176 Cal.App.3d 202, 211 [221 Cal.Rptr. 728].) Where a statute or amendment serves to clarify existing law, such action is not considered a change because it merely restates the law as it was all the time and retroactivity is not involved. (*Ibid.*) ■ Here, we have a manifest change in the law.

In Penal Code section 627, the Legislature expressly states it is enacting the chapter 1.1, Access to School Premises, *to implement* the provisions of section 28. The language of the section sounds prospectively only.

The same infirmities exist with respect to Education Code section 32261 added in 1985. A reading of the statute clearly shows it also has a prospective application. In it, the Legislature calls for the *establishment* of an "inter-agency coordination system," and the Legislature encourages such agencies "*to develop and implement*" strategies which "*will improve*" school attendance and reduce school crime.[7]

Amici curiae urge the enactment of section 28, subdivision (c), as an amendment to the state Constitution was "remedial and designed to clarify and declare existing constitutional, common law and statutory law, . . [,]" but point to no "existing law" which the new statutes merely clarify. We therefore do not reach the question as to what would be the effect, if any, on the liability of the district of section 28, subdivision (c), Penal Code section 627 or Education Code section 32261. Rodriguez's injuries occurred in 1981, and the above provisions were adopted and enacted in 1982 and 1985 and are not retroactive.

■ 3. *Immunity discussion not necessary.*

Whereas *Lopez* as a demurrer case, recognizes the well established rule that allegations of a complaint must be liberally construed, and also takes

---

[7]Education Code section 32250 was passed in 1980. It reads: "The Legislature recognizes that crime, including vandalism, and violence have reached an alarming level at school sites throughout California. The Legislature further recognizes that there is a need for dealing with the complex problems of crime and violence at school sites and for developing effective techniques and programs to combat crime and violence at school sites."

The legislative history of this section indicates the section does not give the district a duty by its own terms, but merely recognizes the problem of crime and violence in public schools and establishes a school safety and resource unit.

cognizance of prior Supreme Court holdings "that, 'in governmental tort cases *"the rule is liability, immunity is the exception"*'[,]" *Lopez* also recognizes that all governmental tort *liability* is statutory. (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at pp. 792-793.)

Section 815 emphasizes that the logical sequence of analysis of governmental tort cases recommended by *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, and *Williams* v. *State of California, supra,* 34 Cal.3d 18, should include a third but intermediate step, namely, *ascertaining a basis for liability,* after finding duty and before deciding immunity. Further, in those cases involving special relationships, there is yet another analytical process to undertake.

Here, we dutifully found a duty first, but our analysis was concluded when we could find no liability. Therefore, it is not necessary to discuss as in *Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at pages 814-815, and *Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal.3d at pages 791-794, whether section 845 immunity applies.

## CONCLUSION

A duty is owed by a school district to protect its students by virtue of the special relationship that is created. However, a finding of duty does not guarantee a recovery against a public entity as governmental liability is statutory only. Immunity is the third prong in a governmental tort action analysis, but need not be reached where the cause of action fails for want of statutory liability.

## DISPOSITION

The judgment of dismissal following the sustaining of the demurrer without leave to amend is affirmed. Parties to bear respective costs on appeal.

Danielson, J., and Arabian, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 22, 1987.