TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-509 |
| of | : | |
| | : | June 10, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE CATHIE WRIGHT, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1.  May school administrators require members of the news media to (1) register their presence on campus, (2) comply with other conditions for interviewing students, observing an event, or examining the curriculum being taught, and (3) leave the premises if their presence would interfere with the peaceful conduct of the activities of the school?

2.  May school administrators require written parental permission before allowing members of the news media to interview students?

CONCLUSIONS

1.  School administrators may require members of the news media to (1) register their presence on campus, (2) comply with other conditions for interviewing students, observing an event, or examining the curriculum being taught, and (3) leave the premises if their presence would interfere with the peaceful conduct of the activities of the school.

2.  School administrators may not require written parental permission before allowing members of the news media to interview students.

ANALYSIS

The First Amendment of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press . . . ." The amendment is made applicable to the states through the Fourteenth Amendment. (*Perumal* v. *Saddleback Valley Unified School District* (1988) 198 Cal.App.3d 64, 68.) California's Constitution, in provisions not dependant upon the federal Constitution, provides in article I, section 2, subdivision (a): "Every person may speak freely, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

With respect to the benefits of a "free press" and its right to gather news, the Supreme Court has observed:

"The . . . public's right to receive and disseminate communications about public affairs implies at least some right to acquire relevant information at the source. It draws on the right to assemble in places and at proceedings traditionally public. It presumes the deterrent effect of public scrutiny on official misconduct. And it emphasizes the unique role of the media in vindicating the right to know." (*San Jose Mercury-News* v. *Municipal Court* (1982) 30 Cal.3d 498, 502.)

1. News Media Access To School Grounds

The first question presented concerns whether members of the news media may enter without restriction school grounds, including classrooms, to interview students, observe events, or examine the curriculum being taught. May school administrators require them to register their presence on campus, impose other conditions in granting access, and deny access under certain conditions? We conclude that reasonable restrictions may be placed upon members of the news media when they seek access to school grounds.

We first note that the Legislature has enacted a comprehensive scheme concerning public assess to school premises. (Pen. Code, §§ 627-627.11.)[1] The Legislature has declared:

"(a) The Legislature finds the following:

"(1) Violent crimes perpetrated on public school grounds interfere with the education of students and threaten the health and safety of teachers, other employees, and students.

_____

[1]All references hereafter to the Penal Code are by section number only.

"(2)  Many serious crimes of violence are committed on school grounds by persons who are neither students nor school employees and who are not otherwise authorized to be present on school grounds.

"(3)  School officials and law enforcement officers, in seeking to control these persons, have been hindered by the lack of effective legislation restricting the access of unauthorized persons to school grounds and providing appropriate criminal sanctions for unauthorized entry.

"(b)  The Legislature declares that the purpose of this chapter is to safeguard the teachers, other employees, students, and property of public schools.  The Legislature recognizes the right to visit school grounds for legitimate nonviolent purposes and does not intend by this enactment to interfere with the exercise of that right.

"(c)  The Legislature finds and declares that a disproportionate share of crimes committed on school campuses are committed by persons who are neither students, school officials, or staff, and who have no lawful business on the school grounds.

"It is the intent of the Legislature in enacting this chapter to promote the safety and security of the public schools by restricting and conditioning the access of unauthorized persons to school campuses and to thereby implement the provisions of Section 28 of Article 1 of the California Constitution which guarantee all students and staff the inalienable constitutional right to attend safe, secure, and peaceful public schools.  It is also the intent of the Legislature that the provisions of this chapter shall not be construed to infringe upon the legitimate exercise of constitutionally protected rights of freedom of speech and expression which may be expressed though rallies, demonstrations, and other forms of expression which may be appropriately engaged in by students and nonstudents in a campus setting."  (§ 627.)

It has thus provided in section 627.2:

"No outsider shall enter or remain on school grounds during school hours without having registered with the principal or designee, except to proceed expeditiously to the office of the principal or designee for the purpose of registering.  If signs posted in accordance with Section 627.6 restrict the entrance or route that outsiders may use to reach the office of the principal or designee, an outsider shall comply with such signs."

Section 627.4 states:

"(a)  The principal or his or her designee may refuse to register an outsider if he or she has a reasonable basis for concluding that the outsider's presence or acts would disrupt the school, its students, its teachers, or its other employees; would result

in damage to property; or would result in the distribution or use of unlawful or controlled substances.

"(b)   The principal, his or her designee, or school security officer may revoke an outsider's registration if he or she has a reasonable basis for concluding that the outsider's presence on school grounds would interfere or is interfering with the peaceful conduct of the activities of the school, or would disrupt or is disrupting the school, its students, its teachers, or its other employees."

Section 627.7 provides:

"(a)   It is a misdemeanor punishable by imprisonment in the county jail not to exceed six months, or by a fine not to exceed five hundred dollars ($500), or by both, for an outsider to fail or refuse to leave the school grounds promptly after the principal, designee, or school security officer has requested the outsider to leave. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b)   The provisions of this section shall not be utilized to impinge upon the lawful exercise of constitutionally protected rights of freedom of speech or assembly."

Members of the news media, however, are specifically exempt from the requirements of this statutory scheme.   Subdivision (a) of section 627.1 provides:

"As used in this chapter, with regard to a public school:

"(a)   An `outsider' is any person other than:

"(1)   A student of the school; except that a student who is currently suspended from the school shall be deemed an outsider for purposes of this chapter.

"(2)   A parent or guardian of a student of the school.

"(3)   An officer or employee of the school district that maintains the school.

"(4)   A public employee whose employment requires him or her to be on school grounds, or any person who is on school grounds at the request of the school.

"(5)   A representative of a school employee organization who is engaged in activities related to the representation of school employees.

"(6)   An elected public official.

"(7)   A person who comes within the provisions of Section 1070 of the Evidence Code by virtue of his or her current employment or occupation."

Persons who come "within the provisions of Section 1070 of the Evidence Code" include:

"(a) A publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, or by a press association or wire service . . . .

"(b) . . . a radio or television news reporter or other person connected with or employed by a radio or television station. . . ."

Accordingly, members of the news media may not be prosecuted for violating the terms of section 627.7 or any other provision of this statutory scheme.

Do the provisions of sections 627-627.11 affirmatively grant members of the news media the authority to enter without restriction school grounds, including classrooms, to interview students, observe campus events, and examine the curriculum being taught? We do not so construe the terms of this statutory scheme. While members of the news media may not be prosecuted under this statutory scheme, the Legislature has not thereby authorized, either expressly or impliedly, unlimited and unrestricted access to school premises by news media representatives (or anyone else). School officials may deny access to members of the news media, as they may deny access to anyone, if their presence would interfere with the peaceful conduct of the activities of the school.[2]

First, we note that the constitutional right to gather information is not without limitation. "The right to speak and publish does not carry with it the unrestrained right to gather information." (*Zemel* v. *Rusk* (1965) 381 U.S. 1, 16-17.) As noted in *Miller* v. *National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1492:

"Newsgathering, as well as news dissemination, may be within the protective ambit of the First Amendment. *Branzburg* v. *Hayes* (1972) 408 U.S. 665, 681 [33 L.Ed.2d 626, 639, 92 S.Ct. 2646], observes that `without some protection for seeking out the news, freedom of the press could be eviscerated.' A series of United States Supreme Court decisions have upheld the right of the press and media to publish information contained in *public* records or obtained during *public* proceedings, as part of the public's right to know. (See, e.g., *Cox Broadcasting Corp.* v. *Cohn* (1975) 420 U.S. 469 [43 L.Ed.2d 328, 95 S.Ct. 1029].) . . .

"Where the United States Supreme Court has addressed the problem of providing adequate constitutional protection for newsgathering, however, it has been careful to point out that the protection is limited, rather than absolute. *Branzburg*, for example, cited with approval the statement that `"[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to

---

[2]A contrary conclusion would allow, for example, a student to interfere with the peaceful conduct of the activities of the school without being subject to dismissal.

invade the rights and liberties of others." *Associated Press* v. *NLRB*, 301 U.S. 103, 132-133 (1937).' (*Branzburg* v. *Hayes* (1972) 408 U.S. 665, 683 [33 L.Ed.2d 626, 640].)"

In *Am. Civil Liberties Union* v. *State of Miss.* (5th Cir. 1990) 911 F.2d 1066, 1071, the court observed:

> "`It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. . . . Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, our own conferences, the meetings of other official bodies gathering in executive session, and the meetings of private organizations. Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded.' *Branzburg* v. *Hayes*, [408 U.S. 665, 684-85. 92 S.Ct. 2646, 2658-59, 33 L.Ed.2d 626 (1972)]. Similarly, newsmen have no constitutional right of access to prisons or their inmates beyond that afforded to the general public. *Pell* v. *Procunier*, 417 U.S. 817, 833-34, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974)."

Second, it is to be observed that "a special relationship is formed between a school district and its students so as to impose an affirmative duty on the district to take all reasonable steps to protect its students." (*Rodriquez* v. *Inglewood Unified Schools Dist.* (1986) 186 Cal.App.3d 707, 715.) Teachers and administrators have a substantial interest in maintaining order in their schools. (*Vernonia School Dist. 47J* v. *Acton* (1995) ___ U.S. ___ [132 L.Ed.2d 564, 574].) There is an "expectation and reliance of parents and students on schools and staff for safe buildings and grounds . . . ." (*Rodriguez* v. *Inglewood Unified School Dist.*, *supra*, 186 Cal.App.3d at 714.) As stated by the court in *Jeglin* v. *San Jacinto Unified School Dist.* (C.D. Cal. 1993) 827 F.Supp. 1459, 1461:

> "It is . . . clear that daily administration of public education is committed to school officials and that such responsibility carries with it the inherent authority to prescribe and control conduct in the schools. The interest of the state is a compelling one and provokes a balancing of First Amendment rights with the state's efforts to preserve and protect its educational process. It is also well established that the First Amendment does not require school officials to wait until disruption actually occurs before they may act to curtail exercise of the right of free speech but that they have a duty to prevent the occurrence of disturbances."

Under First Amendment principles, school administrators may reasonably regulate access to school grounds and impose conditions so as "to preserve the property under [their] control for the use of which it is lawfully dedicated":

> ". . . We have recognized that the `First Amendment does not guarantee access to property simply because it is owned or controlled by the government.' [Citation.] In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials

oppose the speaker's view. [Citation.] As we have stated on several occasions, `"`[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use of which it is lawfully dedicated."" [Citations.]" (*Perry Ed. Assn.* v. *Perry Local Educators' Assn.* (1983) 460 U.S. 37, 46.)

Pursuant to a different statutory scheme (§§ 626-626.11) than analyzed above, school administrators are expressly authorized to request persons to leave school grounds in order to maintain order in the use of the school's facilities. Subdivision (a) of section 626.6 provides:

"In any case in which a person who is not a student, officer, or employee of a . . . school, and who is not required by his or her employment to be on the campus . . . and it reasonably appears to the chief administrative officer . . . or employee designated by the chief administrative officer to maintain order on such campus or facility that such person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or has entered the campus or facility for the purpose of committing any such act, the chief administrative officer or officer or employee designated by him or her to maintain order on the campus or facility may direct the person to leave the campus or facility . . . ."[3]

Similarly, Education Code section 32211, subdivision (a) provides:

"Any person who is not a student of the public school, a parent or guardian of a student of the public school, or an officer or employee of the school district maintaining the public school, or who is not required by his or her employment to be in a public building or on the grounds of the public school, and who entered any public school building or the grounds of any public school building, during school hours, and who is requested either by the principal of the public school or by the designee of the principal to leave a public school building or public school grounds shall promptly depart therefrom and shall not return for at least 48 hours. A request that a person depart from a public school building or public school grounds shall be made by the principal, or the designee of the principal, exclusively on the basis that it appears reasonable to the principal, or the designees of the principal to conclude that the continued presence of the person requested to depart would be disruptive of, or would interfere with, classes or other activities of the public school program."[4]

---

[3]   Penal Code section 626, subdivision (a)(4) defines "school" as including "any elementary school, junior high school, four-year high school, senior high school, adult school or any branch thereof, opportunity school, continuation high school, regional occupational center, evening high school, technical school or any public right-of-way situated immediately adjacent to school property or any other place if a teacher and one or more students are required to be at that place in connection with assigned school activities."

[4]   Willful disturbance of public schools is a criminal offense, as provided in Education Code section 32210: "Any person who willfully disturbs any public school or any public school meeting is guilty of a misdemeanor, and shall be punished by a fine of not more than five hundred dollars ($500)."

We reject the suggestion that a media representative would be exempt from the terms of section 626.6 and Education Code section 32211 if he or she is "required by his or her employment" to be present on a school's premises. To merit exemption, the employee's work must relate to the functions of the school or its educational purposes; otherwise, the exemption would virtually swallow up the statutory prohibition. (See *Grattan* v. *Board of School Com'rs of Baltimore City* (4th Cir. 1986) 805 F.2d 1160 ["lawful business" means activity which is related to the educational purposes of the public school property, such as that of a textbook salesman].)

Finally, we note that the Legislature has directed school authorities to minimize classroom interruptions. Education Code section 32212 provide in part:

"(a) The Legislature finds and declares that interruption of class time seriously impairs the educational process.

"(b) It is the intent of the Legislature that each governing board of a school district formally address the problem of classroom interruptions and adopt a policy to control those interruptions, consistent with local circumstances and practices."

Under this statutory directive, news media members may have their access to school classrooms controlled so that the school's educational objectives will not be seriously impaired.

We conclude that school administrators may require members of the news media to follow reasonable conditions while they are on school grounds in order to prevent interference with the orderly educational activities of the school. These conditions may restrict the news media representatives in the same manner that access by members of the general public may be limited, i.e., requiring registration, accompaniment by a staff member while on school grounds, and denial of permission to enter classes that are in session. Members of the news media, as well as members of the general public, may be asked to leave if it reasonably appears to school officials that such persons are committing acts likely to interfere with the peaceful conduct of the school's educational activities.

2. Parental Permission Before Media Interviews

The second question presented concerns whether school administrators may require written parental permission before allowing members of the news media to interview particular students on campus. We conclude that prior written parental permission may not be required.

It is now well established that students have a federal constitutional right to freedom of speech. A student may express his or her opinion on school premises, with certain limitations. In *Lopez* v. *Tulare Joint Union High School* (1995) 34 Cal.App.4th 1302, 1310, the court recently stated:

"Judicial recognition of students' free speech rights came with the land-mark United States Supreme court ruling in *Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503 [21 L.Ed.2d 731, 89 S.Ct. 733]. The *Tinker* court recognized that school officials generally had comprehensive authority to prescribe and control conduct in the

schools, but this authority did not extend to administrative censorship of public school students' nondisruptive expression. Students did not `shed their constitutional rights to freedom of speech or expression at the school house gate.' Thus, although students' First Amendment rights had to be `applied in light of the special characteristics of the school environment,' students could not be `confined to the expression of those sentiments that are officially approved.' (*Id.* at pp. 506, 511 [21 L.Ed.2d at pp. 737, 740].)

"The court declared that students may exercise their rights to freedom of expression unless the `conduct by the student, in class or out of it, which for any reason -- whether it stems from time, place or type of behavior -- materially disrupts classwork or involves substantial disorder or invasion of the rights of others . . . .'"

The Legislature has enacted Education Code section 48907 to protect students' rights of free speech. The statute provides:

"Students of the public schools shall have the right to exercise freedom of speech and of the press including, but not limited to, the use of bulletin boards, the distribution of printed materials or petitions, the wearing of buttons, badges, and other insignia, and the right of expression in official publications, whether or not such publications or other means of expression are supported financially by the school or by use of school facilities, except that expression shall be prohibited which is obscene, libelous, or slanderous. Also prohibited shall be material which so incites students as to create a clear and present danger of the commission of unlawful acts on school premises or the violation of lawful school regulations, or the substantial disruption of the orderly operation of the school.

"Each governing board of a school district and each county board of education shall adopt rules and regulations in the form of a written publications code, which shall include reasonable provisions for the time, place, and manner of conducting such activities within its respective jurisdiction.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Nothing in this section shall prohibit or prevent any governing board of a school district from adopting otherwise valid rules and regulations relating to oral communication by students upon the premises of each school."

Pursuant to the terms of Education Code section 48907, which provides greater protection for a student's free speech rights than the First Amendment, school officials may not impose prior restraints upon students except in limited circumstances not applicable here. (See *Lopez* v. *Tulare Joint Union High School Dist., supra*, 34 Cal.App.4th at 1317-1322.) Requiring parental permission for a student interview would constitute such an impermissible prior restraint.

Education Code section 48950 additionally provides:

"(a) School districts operating one or more high schools and private secondary schools shall not make or enforce any rule subjecting any high school pupil to disciplinary sanctions solely on the basis of conduct that is speech or other communication that, when engaged in outside of the campus, is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article I of the California Constitution.

"(b) Any pupil enrolled in a school that has made or enforced any rule in violation of subdivision (a) may commence a civil action to obtain appropriate injunctive and declaratory relief as determined by the court. Upon motion, a court may award attorney's fees to a prevailing plaintiff in a civil action pursuant to this section.

"(c) This section does not apply to any private secondary school that is controlled by a religious organization, to the extent that the application of this section would not be consistent with the religious tenets of the organization.

"(d) Nothing in this section prohibits the imposition of discipline for harassment, threats, or intimidation, unless constitutionally protected.

"(e) Nothing in this section shall be construed to supersede, or otherwise limit or modify, the provisions of Section 48907.

"(f) The Legislature finds and declares that free speech rights are subject to reasonable time, place, and manner regulations."

The Legislature's purpose in enacting section 48950 was explained in *Lopez* v. *Tulare Joint Union High School Dist.*, *supra*, 34 Cal.App.4th at 1316: "The legislative intent was `"that a student shall have the same right to exercise his or her right to free speech on campus as he or she enjoys when off campus."' [Citation.]" Requiring prior parental permission for student interviews on campus by a news media representative would violate the underlying purpose of section 48950.

A parent may, of course, instruct his or her child not to communicate with news media representatives. This is a matter for the exercise of parental discretion, whether the child is on or off school property.

We conclude that school administrators may not require written parental permission before allowing members of the news media to interview students.

* * * * *