Filed 9/30/24  Hedayatzadeh v. North County Transit District CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FARID HEDAYATZADEH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NORTH COUNTY TRANSIT DISTRICT,<br><br>    Defendant and Respondent. | D081656<br><br>(Super. Ct. No. 37-2017-00014136-CU-PO-NC)<br><br>ORDER MODIFYING OPINION AND DENYING REQUEST FOR PUBLICATION<br><br> NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 6, 2024, be modified as follows:

On page 1, the counsel listing for Defendant and Respondent is replaced with the following listing:

> "Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Daniel R. Velladao, Anthony E. Sonnett, Ernest Slome, and V. Alan Arshansky for Defendant and Respondent."

The Association of Southern California Defense Counsel's request for publication filed on September 24, 2024, is denied.

There is no change in the judgment.

IRION, Acting P. J.

Copies to:  All parties

Filed 9/6/24  Hedayatzadeh v. North County Transit District CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FARID HEDAYATZADEH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NORTH COUNTY TRANSIT DISTRICT,<br><br>    Defendant and Respondent. | D081656<br><br><br><br>(Super. Ct. No. 37-2017-00014136-CU-PO-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Khashayar Law Group and Daryoosh Khashayar for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffrey A. Miller, Daniel R. Velladao, and Anthony E. Sonnett for Defendant and Respondent.

Farid Hedayatzadeh (Hedayatzadeh) appeals following an adverse jury verdict in his lawsuit against North County Transit District (NCTD) alleging a dangerous condition of public property after Hedayatzadeh's 19-year-old son, Javad, was tragically struck and killed by a train on property owned by NCTD.  Specifically, Hedayatzadeh contends that the trial court prejudicially erred in sustaining certain objections during his counsel's closing argument

to the jury. We conclude that Hedayatzadeh's contention lacks merit, and we accordingly affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of September 24, 2016, 19-year-old Javad[1] drove to Del Mar with friends. They parked at the end of 13th Street, which terminates at an ocean bluff. A railroad right-of-way owned by NCTD runs along the top of the ocean bluff, perpendicular to the end of 13th Street. People are able to walk around a guardrail at the end of 13th Street to cross the train tracks and reach the ocean bluff, as no fencing has been installed to prevent such access. NCTD is required to compile data about trespasser fatalities along its train tracks, which it must report to a federal agency. NCTD also tracks data about near misses and the number of observed trespassers, which it includes in quarterly reports.

On the night at issue, Javad and his friends walked down the embankment at the end of 13th Street and crossed the train tracks to get to the ocean bluff, where they talked and smoked marijuana. Javad noticed a train coming and told his friends that he was going to use his phone to take a video "selfie" of himself next to the train. As Javad stood next to the train tracks to take a selfie, he was struck by the train and killed.

Hedayatzadeh filed this lawsuit against NCTD and two other parties.[2] The lawsuit proceeded to trial against NCTD on the cause of action alleging

---

[1]     For the sake of clarity we refer to Javad Hedayatzadeh by his first name, and we intend no disrespect by doing so.

[2]     The other two defendants were the City of Del Mar and the entity that allegedly operated the train, BNSF Railway Company. Those parties both obtained dismissals prior to trial. In a previous opinion we affirmed the trial

that NCTD created a dangerous condition of public property. (Gov. Code, § 835.)

At trial, Hedayatzadeh's theory of liability was that NCTD's right-of-way constituted a dangerous condition of public property because, among other things, NCTD did not install fencing to deter trespassers from walking near the railroad tracks, and NCTD did not warn trespassers about the width of the trains.

NCTD argued that the railroad right-of-way did not constitute a dangerous condition of public property because a person using reasonable care would know to avoid a moving train.[3] NCTD did not dispute that the bluff area is dangerous and that trespassing is common. Indeed, the evidence at trial showed that NCTD had recently recommended the installation of fencing because of the danger posed to the frequent trespassers, but that proposal was opposed by multiple parties, including the City of Del Mar and the California Coastal Commission.

The jury found that NCTD's property was not in a dangerous condition at the time of Javad's death, and the trial court entered judgment in favor of NCTD. Hedayatzadeh appeals from the judgment.

court's order granting the motion for summary judgment brought by the City of Del Mar. (*Hedayatzadeh v. City of Del Mar* (2020) 44 Cal.App.5th 555.)

[3] The jury was instructed that "a 'dangerous condition' is a condition of public property that creates a substantial risk of injury to members of the general public when the property is used with reasonable care and in a reasonably foreseeable manner," and that "[a] condition is not dangerous unless it creates a hazard to those who foreseeably will use the property with due care." (See CACI No. 1102.)

3

II.

DISCUSSION

Hedayatzadeh's sole contention on appeal is that the trial court prejudicially erred when, during the closing argument of plaintiff's counsel, the trial court sustained certain objections raised by counsel for NCTD.

A.     *Applicable Legal Standards*

"In conducting closing argument, attorneys for both sides have wide latitude to discuss the case. ' " ' "The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom.  The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury." ' " . . .  "An attorney is permitted to argue all reasonable inferences from the evidence." ' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 795–796 (*Cassim*).)

However, " 'counsel may not assume or state facts not in evidence [citation] or mischaracterize the evidence [citation].' " (*People v. Collins* (2010) 49 Cal.4th 175, 209 (*Collins*).)  Nor may counsel " 'invite the jury to speculate as to unsupported inferences.' " (*Cassim*, *supra*, 33 Cal.4th at p. 796.)  "[T]rial courts have 'broad discretion' to limit both the duration and scope of closing arguments.' " (*People v. Simon* (2016) 1 Cal.5th 98, 147–148.)

We apply an abuse of discretion standard when reviewing a trial court's ruling sustaining an objection during closing argument. (*People v. Edwards* (2013) 57 Cal.4th 658, 743 [concluding that "the trial court did not abuse its broad discretion" to sustain opposing counsel's objection during closing argument].)

4

If we find error in sustaining an objection during closing argument, the error will not require reversal unless the appellant establishes a reasonable probability of a more favorable result in the absence of the error. (*People v. Harris* (2013) 57 Cal.4th 804, 853 [citing *People v. Watson* (1956) 46 Cal.2d 818, 836].)

B.    *The Trial Court Did Not Abuse Its Discretion in Sustaining the Objections*

Hedayatzadeh contends that, at four different points during the closing argument of plaintiff's counsel, the trial court erred in sustaining NCTD's objections. We will, accordingly, break our analysis into four separate parts.

1.    *Statements Regarding NCTD's Failure to Provide Statistical Evidence Relating to the Danger Posed to Trespassers*

The first group of statements to which the trial court sustained objections concerned the dangerous nature of NCTD's right-of-way along the Del Mar bluffs. Specifically, plaintiff's counsel argued to the jury that it should conclude the area is dangerous because NCTD did not produce accurate information to the contrary, such as statistics showing only a low number of incidents involving pedestrians and trains in that area. In so doing, counsel repeatedly stated that NCTD had failed to provide relevant evidence. The trial court repeatedly sustained objections to those statements.

> "[PLAINTIFF'S COUNSEL]: . . . If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence. That's the law. Weaker evidence, let's go through what they produced. NCTD is the party who has the ability to provide better evidence with regards to all this data that they've had for decades. All that data, all that information. Don't you think for a second if some of that data was 'This area is actually not that dangerous,' 'We didn't have notice of it,' 'We didn't know about this,' don't you think they would put all of that on there and show you? They would be rushing people back and forth on that stand telling you, 'We never knew about this. The

5

data shows there's only one or two.' They're the ones who have the opportunity and they didn't produce it.

"[DEFENDANT'S COUNSEL]: Your Honor, I object to that that's false.

"THE COURT: The legal objection.

"[DEFENDANT'S COUNSEL]: Mischaracterizes the evidence.

"THE COURT: Sustained.

"[PLAINTIFF'S COUNSEL]: As to data regarding near-misses on the bluffs, they didn't bring any data about that. They're the ones that have it. They're the ones that have this information.

"[DEFENDANT'S COUNSEL]: Object, your Honor.

"THE COURT: Legal basis.

"[DEFENDANT'S COUNSEL]: Mischaracterizes the evidence.

"THE COURT: Sustained.

"[PLAINTIFF'S COUNSEL]: Pedestrian strikes. Who has the ability to bring you that data? Who has it, between the two parties, who has the ability to show you, 'Look, these are all the pedestrian strikes.' They didn't produce one person on there to say 'These are the actual information. This is what we had, here it is. Here you go.' That was not presented.

"[DEFENDANT'S COUNSEL]: Your Honor, I object.

"THE COURT: Your objection, the legal basis.

"[DEFENDANT'S COUNSEL]: Mischaracterizes the evidence.

"THE COURT: Sustained.

"[PLAINTIFF'S COUNSEL]: Same thing with fatalities. [NCTD's executive director] said, 'We have one that I saw in 2010,' [NCTD's chief of safety], said something like, 'Oh, I think there was two or three. We're not sure.' Actually, [NCTD's chief of safety], if you recall just yesterday went back to his office,

6

brought a sign just to show you what the sign looked like. He didn't go back and look for data.

"[DEFENDANT'S COUNSEL]: Your Honor, I object to this as well.

"[PLAINTIFF'S COUNSEL]: He could have shown that to you as well.

"THE COURT: Legal basis.

"[DEFENDANT'S COUNSEL]: Mischaracterizes the evidence.

"THE COURT: Sustained.

"[PLAINTIFF'S COUNSEL]: He has the power to bring it to you, ladies and gentlemen. We want to show you the evidence. We are here—

"[DEFENDANT'S COUNSEL]: Your Honor, object. Mischaracterizes the evidence.

"THE COURT: Sustained."

Hedayatzadeh argues on appeal that because NCTD had "detailed working statistics" about "the number of pedestrians who had been struck by trains along and near the railroad tracks in the Bluffs area," counsel's "[c]omment in closing argument about the failure of NCTD to come forward with such evidence was reasonable and fair on the issue of notice of the danger accompanying the track configuration."

In deciding whether the trial court erred in sustaining the objections, we must first attempt to ascertain the basis for NCTD's objections that counsel's statements "mischaracterize[d] the evidence." Having reviewed the relevant portion of the reporter's transcript, we infer NCTD concluded that plaintiff's counsel was accusing NCTD of having withheld statistical evidence. NCTD apparently believed that such an accusation mischaracterized the evidence because nothing in the record suggested that

7

NCTD had failed to comply with its discovery obligations or had failed to turn over statistical information. Indeed, according to our review of the record, not only was there no indication NCTD had withheld such data, plaintiff's counsel examined witnesses from NCTD at length about the content of reports and other filings created by NCTD that contain such data.[4]

Based on our review of plaintiff's counsel's remarks, we conclude that a reasonable listener could interpret them as an accusation that NCTD had nefariously withheld evidence. Counsel may not have *intended* to accuse NCTD of nefariously withholding evidence, but he inadvertently ended up doing so. From our reading, it seems that counsel was trying to make the simple point that NCTD was unable to dispute that the statistics showed that there were a significant number of fatalities and near misses along the Del Mar bluffs. To emphasize that point, counsel argued that, if the facts were otherwise, NCTD would have highlighted such facts, but it was unable to do so. Unfortunately, in making that point, counsel veered off into a series of statements that a reasonable juror could understand as an accusation that NCTD had withheld evidence and that, due to NCTD's misconduct, the jury had not been shown all the relevant data.

Counsel stated, "They're the ones who have the opportunity and they didn't produce it"; "[T]hey didn't bring any data about that. They're the ones

---

4        Witnesses from NCTD explained that NCTD reports data about trespasser fatalities to a federal agency and that statistics about near misses and trespassers appear in NCTD's quarterly reports. At trial, NCTD's executive director testified about statistics documenting incidents at the Del Mar bluffs that NCTD submitted to (1) support its application to obtain a grant for funds to allow the installation of fencing along the railroad tracks; and (2) argue for an order from the federal Surface Transportation Board that NCTD has the right to install fencing along the railroad tracks in Del Mar.

that have it.  They're the ones that have this information"; "Who has the ability to bring you that data?  Who has it, between the two parties, who has the ability to show you"; "He didn't go back and look for data"; "He has the power to bring it to you, ladies and gentlemen.  We want to show you the evidence."  A juror listening to counsel's closing argument could reasonably understand counsel to be asserting that NCTD willfully suppressed evidence or failed to turn over relevant evidence that Hedayatzadeh sought during discovery.

"Accusing opposing counsel of willfully suppressing evidence *without justification to do so* is misconduct and may be ground for a new trial." (Wegner et al., Cal. Practice Guide:  Civil Trials and Evidence (The Rutter Group 2023), ¶ 13:127, p. 13-31 [citing *Keena v. United Railroads of San Francisco* (1925) 197 Cal. 148, 159–160].)  Case law plainly disapproves of such conduct.  (*Kenworthy v. State* (1965) 236 Cal.App.2d 378, 398 [counsel committed misconduct in argument by stating that the opposing party had suppressed evidence when "[t]here was no proof of this whatever"]; *Smith v. Covell* (1980) 100 Cal.App.3d 947, 956 [counsel committed misconduct during closing argument by commenting on the opposing parties' failure to call witnesses, with "the implication that such [witnesses] would have testified adversely to plaintiffs' case," even though the witnesses "were equally available to subpoena by defendant had she chosen to call them"].)  Further, any type of mischaracterization of the evidence during closing argument is improper.  (*Collins*, *supra*, 49 Cal.4th at p. 209.)

The proper response by the trial court to such misconduct is to sustain opposing counsel's objections to such statements and instruct the jury to disregard them.  (*Neumann v. Bishop* (1976) 59 Cal.App.3d 451, 482 [when counsel improperly stated in closing argument that the defendant's failure to

9

call witnesses amounted to the suppression of unfavorable evidence, "if proper objection had been interposed the court would have been obliged to cut short plaintiff's comments with reference to those prospective witnesses and to admonish the jurors to disregard what had been said"].)

Here, because the trial court reasonably could have concluded that the jury might perceive that counsel was accusing NCTD of willfully suppressing evidence, although the record did not suggest that NCTD had done so, it was well within the trial court's discretion to sustain NCTD's objections that plaintiff's counsel had mischaracterized the evidence.

Further, even if Hedayatzadeh were able establish the trial court erred in sustaining the objections, he would not be able to show prejudicial error. When the trial court sustained the objections counsel was attempting to make the point that the statistical evidence showed a significant number of fatalities and near misses on the Del Mar bluffs and that NCTD had notice of that data. However, at trial, NCTD did not dispute the statistics showing such incidents. Indeed, it was in NCTD's *own* reports where those incidents were documented. Further, during its own closing argument, NCTD plainly admitted that it was dangerous for trespassers to be on the Del Mar bluffs and that trespassers had been hit by trains. NCTD did not dispute those facts as its defense focused on the argument that a person using reasonable care would know not to stand near a moving train. Accordingly, it is not reasonably probable that Hedayatzadeh would have achieved a more favorable result if the trial court had overruled the objections.

2. *Statement Regarding NCTD's Lack of Enforcement Against Trespassers*

The next portion of plaintiff's counsel's closing argument concerns statements in which counsel argued there was no evidence at trial that NCTD had conducted the "proper enforcement" of the trespassing laws on the

10

Del Mar bluffs that they "needed to do," and that NCTD was not able to "justify that they've actually done it."

Leading up to the relevant statements, plaintiff's counsel first reminded the jury that certain witnesses had testified about using a three-part approach to prevent trespasser incidents on NCTD's right-of-way, focusing on "education, enforcement, and engineering." Then, referring to that three-part approach, counsel stated, "That was the testimony, that they needed to do that. If there was proper enforcement, there would be people up there, 'We enforce it. There's this many tickets every day. Look, look. Here's the information. We're enforcing it.'" Counsel for NCTD made an objection. The trial court sustained the objection and instructed the jury that it was to disregard "[t]he argument regarding the enforcement." After a brief break for an unreported discussion between counsel and the trial court, plaintiff's counsel immediately returned to the subject of NCTD's lack of enforcement. Referring to NCTD's witnesses, counsel argued, "When asked on the stand about enforcement, none of them produced a single information that would justify that they've actually done it." The trial court sustained NCTD's objection to that statement, and it directed the jury to "disregard the statement about the lack of evidence of enforcement."

The trial court's ruling sustaining NCTD's objections were made in the context of proceedings earlier in the day, during which the trial court ruled on a motion that NCTD brought prior to closing argument (NCTD's pre-argument motion). Specifically, NCTD's pre-argument motion asked the trial court to preclude plaintiff's counsel from arguing that NCTD failed to adequately enforce the trespassing laws. NCTD based its motion on Government Code section 845, which states that a public entity is not "liable for failure to . . . provide police protection service or . . . provide sufficient

11

police protection service." NCTD further relied on case law it characterized as supporting a rule that the "presence or absence of police is not a physical characteristic [of] a property and thus cannot be considered in an action for dangerous condition of public property." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1352; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1135–1141; *Bartell v. Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 497–498; *Wright v. Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277–278; *Avedon v. State of California* (2010) 186 Cal.App.4th 1336, 1343.)

In ruling on NCTD's pre-argument motion, the trial court explained that it would allow counsel to remind the jury of the evidence at trial regarding the recommended approach of "education, enforcement, and engineering" to provide railroad safety, but that it would not allow counsel to argue that the lack of enforcement was a factor giving rise to a dangerous condition. The trial court explained that case law holds lack of policing is not a relevant factor when determining a dangerous condition, and any such statement to the jury "would result in an objection and a sustaining of that objection." Counsel stated that he was not planning to argue that lack of enforcement created a dangerous condition.

At the same pre-argument hearing, the trial court also noted that because of how Hedayatzadeh had pled his case, the issue to be decided at trial was whether there was a dangerous condition of public property, not whether NCTD had breached any particular duty.[5] The trial court observed

---

[5] The trial court's observation that duty was not at issue arose when it was ruling on a different pre-argument motion brought by NCTD, which raised the question of whether NCTD had a duty to warn about the width of trains. However, the trial court's comment that duty was not a relevant issue

12

that because NCTD's duty was not a relevant issue, "any argument regarding [duty] would be inappropriate in the context of how this case has been styled. It's whether there was a dangerous condition." The trial court emphasized that if counsel argued that NCTD had a specific duty as a matter of law, the argument "would elicit an objection that would be sustained." Plaintiff's counsel indicated that he understood that NCTD's duty was not at issue.

In light of this background, after sustaining NCTD's objections to counsel's argument about NCTD's failure to enforce the trespassing prohibition, the trial court explained to counsel, at a break in the proceedings, why it had sustained the objections. The trial court specifically referred back to its discussion on the issue of duty. The trial court explained that the objections were sustained because counsel's argument about the lack of enforcement "went to the issue of duty. [Counsel] didn't say the word 'duty,' but that was what was suggested and that's why I sustained it."

On appeal, Hedayatzadeh argues in a conclusory manner and without citation to authority that the trial court erred in sustaining the objections to counsel's argument about NCTD's failure to enforce the trespassing prohibition. In an extremely cursory discussion, without any citation to authority, Hedayatzadeh's appellate briefing contends that "NCTD's failure to diligently enforce trespassing citations went to the issue of its knowledge of the danger and its failure to ameliorate that danger," and that such argument was, therefore, "clearly relevant." In making this argument, Hedayatzadeh's briefing does not acknowledge or discuss the trial court's ruling on NCTD's pre-argument motion, in which it limited the scope of

at trial is a generally applicable observation. Hedayatzadeh has identified no reason that the trial court's generally applicable observation would not also apply to a contention that NCTD had a duty to enforce the prohibition against trespassing.

13

counsel's argument about NCTD's lack of enforcement.[6]  Nor does Hedayatzadeh grapple with the trial court's explanation that it sustained the objections because NCTD's duty was not a relevant issue at trial.

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. . . .  [W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [it] wants us to adopt."  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.)  Here, to the extent Hedayatzadeh intended, in his appellate briefing, to challenge the trial court's ruling on NCTD's pre-argument motion, or to contend that counsel's argument about NCTD's lack of proper enforcement did not improperly veer into a discussion about NCTD's breach of duty, the argument is forfeited because it has not been adequately developed.  (*Ibid*.)

---

[6]  For the first time at oral argument, counsel for Hedayatzadeh acknowledged and discussed the trial court's ruling on NCTD's pre-argument motion, in which NCTD relied on Government Code section 845 to seek a ruling precluding Hedayatzadeh from arguing to the jury that NCTD failed to adequately enforce the trespassing laws.  Hedayatzadeh's counsel (who also represented Hedayatzadeh at trial) stated that he did not receive adequate notice of NCTD's pre-argument motion before the trial court ruled on it, and that the motion should have been brought at the beginning of trial, although he also conceded that he did not request a continuance prior to the trial court's ruling on the motion.  Counsel further contended at oral argument that the trial court's ruling was unclear and that he was surprised when the trial court sustained NCTD's objections to his argument concerning NCTD's failure to enforce the prohibition against trespassing.  To the extent that Hedayatzadeh intended, at oral argument, to challenge the trial court's ruling on NCTD's pre-argument motion, the argument has been forfeited because it was not raised in Hedayatzadeh's appellate briefing.  (*People v. Carrasco* (2014) 59 Cal.4th 924, 990 [challenge raised for the first time at oral argument was forfeited because " '[o]bvious reasons of fairness militate against consideration of an issue raised initially' at oral argument"].)

14

Because Hedayatzadeh has not meaningfully challenged the trial court's rulings that (1) the existence of a dangerous condition of public property cannot be proven based on lack of enforcement; and (2) NCTD's breach of duty was not a relevant issue, he has failed to carry his burden to establish that the trial court abused its discretion by sustaining the objections to counsel's argument about NCTD's lack of enforcement. In the particular statements at issue, counsel referred to the "proper enforcement" that NCTD "needed to do," and he contended that NCTD had failed to "justify" its lack of enforcement. The trial court could reasonably understand those statements as an argument either that NCTD breached a duty by failing to enforce the prohibition against trespassing, or that NCTD created a dangerous condition by failing to do so. Whichever meaning counsel intended, the argument violated the trial court's prior rulings, and the trial court was therefore within its discretion to sustain the objections.

3. *Statement Regarding Lack of Warnings About Train Width*

The third portion of closing argument at issue concerns a statement by plaintiff's counsel that NCTD failed to warn trespassers that trains were wide enough to extend beyond the railroad ties. Referring to a witness's testimony, counsel told the jury that the witness "[c]onfirmed that there is no signs or warning telling people that there's portions of the train that sticks out. He confirms that." Opposing counsel objected to the statement. The trial court sustained the objection and instructed the jury to "disregard about the trains sticking out past the railroad."

We begin with a discussion of the relevant background on this issue. At trial, an accident reconstruction expert testified that Javad was struck by a handrail on the train's locomotive, which extended 7.1 inches past the railroad ties. A different witness testified that during the relevant time

15

period, the locomotive of NCTD's Coaster train extended beyond the railroad ties, but that an image of the coach cars of the Coaster train showed that those cars did not extend beyond the ties. After the close of evidence, NCTD sought to reopen the testimony to recall a witness to testify that the coach cars of a train can, in fact, extend beyond the railroad ties. The trial court denied the request. Thus, the only evidence before the jury regarding the width of a train extending beyond the railroad ties related to the train's locomotive.

Prior to closing argument, NCTD sought a ruling to "exclude any argument relating to the width of the trains or locomotives." The trial court declined to make such a ruling.

The statement at issue here was the first time during closing argument that plaintiff's counsel mentioned the width of a train extending beyond the railroad ties. As we have explained, counsel referred to the lack of signage warning that "there's portions of the train that sticks out." Opposing counsel objected to the statement. The trial court sustained the objection and instructed the jury to "disregard about the trains sticking out past the railroad."

What the trial court said next made clear that it sustained the objection because counsel had referred to the width of the *train* rather than the width of the *locomotive*. The trial court said, "The locomotive. . . . The locomotive, [plaintiff's counsel]." Plaintiff's counsel then proceeded with his argument about the witness confirming there were no warnings regarding train width, but this time being careful to refer to the width of the *locomotive*. Counsel argued, "He confirmed there's no signs telling them that the locomotive sticks out. No warning people that the locomotive—when I asked him, is there anything people that people will know that this locomotive has

16

this seven, eight, whatever inches that sticks out?  No, none of that.  No evidence."  The trial court allowed the argument.

On appeal, Hedayatzadeh argues that the trial court erred in sustaining the objection to counsel's initial statement that "there is no signs or warning telling people that there's portions of the train that sticks out."  In a very cursory argument, he contends that the trial court erred because "the adequacy of such signage, including its placement and content, was in issue."

The argument fails because it does not acknowledge the basis for the trial court's ruling sustaining the objection.  During closing argument, " 'counsel may not . . . mischaracterize the evidence.' "  (*Collins*, *supra*, 49 Cal.4th at p. 209.)  Here, because the evidence at trial established that portions of the locomotive extended beyond the railroad ties, but there was no evidence that the rail cars extended beyond the ties, the trial court was within its discretion to conclude that counsel mischaracterized the evidence because he referred generally to the width of the "train" rather than referring specifically to the locomotive.

Moreover, even if Hedayatzadeh had established error, he would not be able to establish prejudice.  Although the trial court sustained the objection and instructed the jury to disregard the statement "about the trains sticking out past the railroad," the trial court next allowed counsel to make the same statement again, but this time with the more accurate reference to the *locomotive*.  Because the jury was ultimately presented with the argument that counsel intended to deliver, it is not reasonably probable that Hedayatzadeh would have achieved a more favorable result if the trial court had not sustained the objection to his initial statement.

17

4. *Statements Regarding NCTD's Expert Witness*

The final statement concerns an argument by plaintiff's counsel contending that an expert witness called by NCTD was biased, based on the parties for whom he had worked.

Plaintiff's counsel argued that the witness "[b]elieves railroad companies are victims. He told you that. He's like, 'That's what I feel.' He's supposed to be a neutral evaluator of the facts, and he has that feeling that railroad companies are victims. He's worked for them for 36 years, and by the way, his entire consultant career, he's only worked for that law firm, defense law firm. Nobody else. Five or six times. He has only worked for defense law firm the entire career as a consultant." Opposing counsel objected that the statement mischaracterized the evidence. The trial court sustained the objection.

Hedayatzadeh argues the trial court erred because "the bias of expert witnesses is potentially always in issue," but he does not specifically address whether, in fact, the trial court properly concluded that plaintiff's counsel had mischaracterized the evidence.

The trial court was within it discretion to conclude that plaintiff's counsel mischaracterized the evidence. (*Collins*, *supra*, 49 Cal.4th at p. 209 [counsel may not mischaracterize evidence during closing argument].) At trial, the expert testified that he had handled "five or six" cases as a consultant, including *one* previous case for the same law firm representing NCTD in Hedayatzadeh's trial, i.e., Lewis Brisbois, Bisgaard & Smith, LLP (Lewis Brisbois). On cross-examination, plaintiff's counsel asked the expert, "At least at the time of your deposition, last year, no other law firm besides Lewis Brisbois had hired you as an expert, correct?" The expert answered, "That's correct."

The expert's testimony does not support the statement by plaintiff's counsel that, as a consultant, the expert had only worked "for that law firm, defense law firm.  Nobody else.  Five or six times."  It is true that *as of the expert's deposition the prior year*, he had only worked for Lewis Brisbois, but that fact was apparently no longer true as of the time of trial.

## DISPOSITION

The judgment is affirmed.  NCTD is awarded its costs on appeal.

IRION, Acting P. J.

WE CONCUR:

DATO, J.

KELETY, J.

19