[No. B217827. Second Dist., Div. Four. July 26, 2010.]

PRISCILLA AVEDON et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Engstrom, Lipscomb & Lack, Walter J. Lack, Richard P. Kinnan, Edward P. Wolfe; Girardi & Keese, Thomas V. Girardi; Devitt & Chelberg and James "Jay" Devitt for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, David Chaney, Chief Assistant Attorney General, James M. Schiavenza, Assistant Attorney General, Marsha S. Miller, Elizabeth S. Angres and Paul C. Epstein, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**EPSTEIN, P. J.**—Property owners whose homes were destroyed or damaged in the 2007 Corral Canyon fire sued the State of California on theories of dangerous condition of public property and nuisance. The trial court sustained the State of California's demurrer without leave to amend and dismissed the action. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On the night of November 23, 2007, some individuals built a bonfire inside a cave in Malibu Creek State Park. In the early hours of the following morning, the bonfire ignited chaparral on the surrounding hillsides, and spread through Corral Canyon toward the ocean. The fire burned almost 5,000 acres, destroyed more than 50 homes, and damaged many others.

Appellants, whose homes were destroyed or damaged by the fire, filed timely claims with the California Victim Compensation and Government Claims Board, in compliance with Government Code section 910.[1] When those claims were rejected, they brought this action against the State of California (the State). According to the allegations of the second amended complaint, the charging pleading, Malibu Creek State Park is owned, maintained and operated by the State. The main park entrance is on Las Virgenes Road in Calabasas. There are several other road entrances; some are controlled by locking gates, others are uncontrolled.

One uncontrolled road entrance is along Corral Canyon Road, which leads in a generally northern direction from Pacific Coast Highway, through Corral Canyon, and dead-ends inside Malibu Creek State Park. Approximately one mile into the park, Corral Canyon Road intersects with Mesa Peak Motorway, an unpaved fire road leading east. About a quarter of a mile after this intersection, Corral Canyon Road dead-ends in an unpaved parking lot. A short distance from the intersection with Corral Canyon Road, Mesa Peak Motorway passes a cave in a rock outcropping, and then continues east. The northern side of the cave looks out over Malibu Creek State Park, and all other sides are enclosed by rock walls.

According to appellants, the cave and the surrounding area have been popular for late-night parties and bonfires for decades. Appellants allege that

---

[1] All statutory references are to the Government Code.

"Graffiti covers all interior rock surfaces of THE CAVE, and there is an abundance of litter in and around THE CAVE. Broken beer bottles completely cover the ground outside THE CAVE'S open north side. The ceiling is blackened with soot from fires inside THE CAVE." Residents of Corral Canyon allegedly notified the State on multiple occasions in the years and months preceding the Corral Canyon fire of the danger created by the parties and bonfires in that area, but the State did not take any measures to restrict access to the top of Corral Canyon or to the cave. The cave was pinpointed by authorities as the origin of the Corral Canyon fire, and five adults were prosecuted for recklessly igniting the fire.

In their first cause of action, for dangerous condition of public property, appellants alleged that "[b]y allowing easy and unrestricted access to the top of Corral Canyon and THE CAVE via Corral Canyon Road, as well as a parking lot within a quarter of a mile of THE CAVE, THE STATE maintained its property in such a way that it created a substantial risk of injury and damage to surrounding properties. By eliminating access, such as by building a gate along Corral Canyon Road at the boundary of its property, THE STATE would more likely than not have eliminated the area's use by late-night partiers." They also alleged the State maintained a dangerous condition by allowing access to the cave, when it could have placed bars or other barriers to block the entrance.

The second cause of action alleged that the State created the nuisance of a severe fire hazard by allowing unrestricted and easy access to the top of Corral Canyon Road and the cave, resulting in the fire damage to appellants' property.

The court sustained the State's demurrer to the first amended complaint with leave to amend, and sustained the demurrer to the second amended complaint without leave to amend. The court entered judgment dismissing the action with prejudice, and appellants filed this timely appeal.

## DISCUSSION

### I

Appellants claim their second amended complaint sufficiently stated a cause of action for dangerous condition of public property.

■ Under section 835, "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous

condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [that]: [¶] . . . [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Section 830 defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Appellants alleged respondent maintained its property in a dangerous condition by allowing easy and unrestricted vehicular access to the top of Corral Canyon and to a parking lot within a quarter of a mile of the cave. They alleged that if respondent had eliminated vehicular access, "such as by building a gate along Corral Canyon Road at the boundary of its property, THE STATE would more likely than not have eliminated the area's use by late-night partiers. . . . Even if partiers climbed over a gate at the Park's boundary, they would have to hike more than a mile and a quarter to THE CAVE up a steep hill, at night, while carrying firewood and alcohol. It is more likely than not that they would not do so. If there were no place to park outside such a gate, the hike would be even longer up Corral Canyon Road just to reach the gate. The only other way to reach THE CAVE is by hiking more than three miles through the Park along the rugged Backbone Trail from the main entrance. It is more likely than not that the partiers would decline to take that alternate route."

Appellants also claimed respondent maintained the property in a dangerous condition "by allowing entry to THE CAVE, which was known to attract partiers who then lit bonfires inside. THE CAVE is only accessible through a narrow opening in one rock side of only approximately two feet across. By placing bars or other barriers across this entrance, THE STATE could have eliminated access to THE CAVE and thereby eliminated THE CAVE as the attraction for the partiers. THE STATE'S failure to bar access to THE CAVE directly affected the conduct of the partiers who lit bonfires inside THE CAVE because if the partiers had been unable to enter THE CAVE, it is more likely than not that they would not have lit any bonfire at the top of Corral Canyon."

These allegations involve the wrongful conduct of third parties on public property. "[T]hird party conduct by itself, unrelated to the condition of the property, does not constitute a 'dangerous condition' for which a public entity may be held liable." (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810 [205 Cal.Rptr. 842, 685 P.2d 1193].) But

"[i]n appropriate circumstances, a public entity may owe members of the public a . . . duty not to maintain public premises in a dangerous condition and, specifically, not to maintain its premises in a condition that will increase the reasonably foreseeable risk that criminal activity will injure such individuals. [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1133 [119 Cal.Rptr.2d 709, 45 P.3d 1171] (*Zelig*).)

■ In *Zelig*, a woman was shot and killed by her ex-husband at a courthouse where she was awaiting a hearing in their dissolution proceedings. Her minor children asserted the county maintained the courthouse in a dangerous condition by failing to install barriers or utilize other safety measures, including metal detectors, posted warnings, and searches. The Supreme Court held that the plaintiffs could not establish a dangerous condition of public property because they were unable to show the necessary causal connection between the physical condition of the property and the shooting. The court emphasized that liability should be imposed "only when there is some defect in the property itself and a causal connection is established between the defect and the injury." (*Zelig, supra*, 27 Cal.4th at p. 1135.) While in some instances a public entity may be required to alter its property to provide a physical barrier against danger presented by third parties, the *Zelig* court concluded that the addition of a physical barrier, by itself, would not have had any effect on the risk of harm faced by the decedent or other persons using the courthouse. The court also concluded that other screening methods would have required additional security personnel, which would implicate the provision of police services, an allocation of resources for which public entities are immune. (27 Cal.4th at pp. 1139–1140; § 845.)

■ The allegations in our case, like those in *Zelig*, suggest no inherent defect in the property itself. Appellants make no claim that the cave, the fire road, or the parking lot was unsafe. The dangerous conditions alleged are the lack of barriers to prevent vehicular access and parking near the cave, and the lack of a barrier to prevent entry into the cave itself. The purpose of these barriers was not to protect individuals from any danger or defect of the property, but to prevent third parties from lighting bonfires in the cave. Barring the entrance to the cave might have prevented third parties from building a bonfire inside the cave, but it would not have prevented them from building a bonfire outside the cave, thereby presenting the same (or even greater) risk of a brush fire. Similarly, blocking nearby vehicular access with a gate might have impeded entry from that particular location, but it would not have prevented individuals from entering the park, or from bringing firewood and alcohol into the park. As in *Zelig*, the absence of barriers did not increase or intensify the risk of injury. And as in *Zelig*, more zealous efforts to reduce the risk would have required increased policing of the area;

public entities are immune from liability for failure to provide sufficient police services. (See § 845.)

Also instructive is *City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21 [40 Cal.Rptr.3d 26]. In that case, an illegal street race on a particular stretch of public road that had been the frequent scene of street races for 10 years resulted in the death of two nonrace participants and serious injuries to another. The plaintiffs[2] asserted that the straight, quarter-mile length of road, with no traffic controls, speed bumps or natural conditions that would deter street racing, constituted a dangerous condition of public property. They also asserted that the danger was increased because poor lighting made it difficult for nonracing drivers to see or gauge the speed of cars racing on the street. The Court of Appeal concluded there was no inherent defect in the roadway where the accident occurred. "It was undisputed the road is straight and level, and has few intersections and no sight line obstructions. While it is true that the very safety and sense of security these features create encourage drivers—those involved in street racing and others—to exceed the speed limit, this does not establish a dangerous physical condition for purposes of section 835. If it did, we would have to conclude every straight, level, unobstructed but unlighted freeway or road would be in an unsafe physical condition if drivers exceeded the speed limit, causing accidents." (*Id.* at pp. 30–31.) The court rejected the claim that inadequate lighting made the property defective because there was no evidence that previous accidents had been caused by poor lighting, and when faced with a street that is otherwise safe if properly used, "it is not possible to say how much, if any, lighting is necessary to protect all drivers from speeding vehicles." (*Id.* at p. 31.) In addition, there was no evidence that the racers were influenced by the absence of streetlights. On the undisputed evidence before it, the court concluded there was no dangerous condition of public property, and directed the trial court to enter summary judgment in favor of the city. (*Id.* at pp. 31–32.)

Appellants rely heavily on *Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789 [198 Cal.Rptr. 208]. In *Swaner*, two individuals on a beach at 2:00 a.m. were struck by a vehicle which entered the beach from an adjacent parking lot. The beach and parking lot were owned by public entities. The plaintiffs sued the public entities, alleging that the absence of a fence or barrier between the parking lot and the beach constituted a dangerous condition of public property. They also alleged that the defendants knew that other vehicles had entered the beach from that parking lot, that such vehicles were racing on the beach, and that people on the beach had been injured as a result. The defendants asserted that the beach was dangerous solely as a result of the third party's conduct, and that lack of a barrier did not constitute a

---

[2] The plaintiffs were the injured passenger and the parents of the deceased passenger.

condition of the property. The court rejected that argument, and held that the plaintiffs' allegations, "if proved, may provide a sufficient level of foreseeability so as to render the condition of the beach a proximate cause of appellants' injuries." (150 Cal.App.3d at p. 806.)

In *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 719 [230 Cal.Rptr. 823], the same court explained that the holding in *Swaner* "was based on its unique facts, and a line is thereby drawn. It appears all the relevant cases are substantially controlled by their distinct factual situations. The physical condition of the public property under scrutiny in *Swaner* was the parking lot's *lack* of a fence or other barrier to prevent vehicles from gaining access to the beach." In contrast, the allegations in *Rodriguez* were that the school district failed to prevent students and other persons from bringing weapons onto school grounds "when such precaution could have been taken by defendants at a minimal expense of money and time," and failed to prevent persons without legitimate business on the campus from gaining access to the school grounds. (*Id.* at p. 719.) The court observed that if *Swaner* had involved armed criminals walking onto the beach from the parking lot at 2:00 a.m. and assaulting beach users, the result would not have been the same because "[n]o simple fence or barrier separating beach and parking lot 'at a minimal expense of money and time' would have prevented such persons from gaining access to the beach. The latter situation presents the issue of providing police protection service for which a public entity is immune under section 845." (*Ibid.*)

■ The dangerous condition alleged in this case is access to a cave at the top of Corral Canyon in Malibu Creek State Park where third parties have been known to light bonfires. But appellants do not allege facts to establish a defect in the cave itself or in the nearby vehicular access to that area of the park. In the absence of a defect in the property, appellants cannot allege facts establishing a causal connection between the defect and the injuries sustained. (See *Zelig, supra,* 27 Cal.4th at p. 1135.) Appellants have failed to state a cause of action for dangerous condition of public property.

## II

Appellants also claim the court erred in sustaining the demurrer to their second cause of action for nuisance.

In their nuisance cause of action, appellants first incorporated the allegations in support of their claim based on a dangerous condition of public property under section 835. They then alleged that "THE STATE allowed the dangerous condition of the State property as described herein to persist as a severe fire risk threatening surrounding private property owners. This severe

fire risk, and its ultimate result, THE CORRAL FIRE, were harmful to Plaintiffs' health and interfered with their ability to comfortably enjoy their property." The other allegations in this cause of action are also predicated on the "dangerous condition of the State property as described herein . . . ."

Civil Code section 3479 defines nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

■ "Given 'the broad definition of nuisance,' the independent viability of a nuisance cause of action 'depends on the facts of each case.' (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1348, [65 Cal.Rptr.3d 524].) 'Where negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim.' (*Id.* at p. 1349.)" (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542 [107 Cal.Rptr.3d 481].)

Here, the nuisance claim is premised on respondent's maintaining a dangerous condition of public property which allowed a severe fire risk to persist. Appellants base this claim on respondent's failure to prevent access to the park and to the cave—the identical theory and the identical facts alleged in support of the cause of action for dangerous condition of public property. Having concluded that appellants cannot proceed on their claim for dangerous condition of public property, it follows that the nuisance claim which mirrors that cause of action also cannot proceed. (*El Escorial Owners' Assn. v. DLC Plastering, Inc., supra,* 154 Cal.App.4th at p. 1348.)

■ This cause of action also is precluded by Civil Code section 3482, which provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Respondent is authorized to operate Malibu Creek State Park under Public Resources Code section 5001 et seq. Under Public Resources Code section 5003, "The department shall administer, protect, develop, and interpret the property under its jurisdiction for the use and enjoyment of the public." Section 5001 gives the Department of Parks and Recreation control of the state park system. Respondent's operation of the park, including its decision to allow access to the cave and to the road near the cave, falls squarely within its statutory authority. A nuisance claim cannot be predicated on these actions.

## DISPOSITION

The judgment is affirmed. Respondent to have its costs on appeal.

Manella, J., and Suzukawa, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 13, 2010, S185947.