Filed 6/24/25  Perez v. County of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CUAUHTEMOC PEREZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent. | B335848 <br><br> (Los Angeles County Super. Ct. No. 22STCV15991) |

APPEAL from the judgment of the Superior Court of Los Angeles County, Lisa R. Jaskol, Judge.  Affirmed.

Lorden & Reed and Zshonette Reed for Plaintiffs and Appellants.

Fuentes & McNally, Raymond Fuentes and Kim E. McNally for Defendant and Respondent.

————————————

Plaintiffs and appellants, a father, mother, and their two children, visited a county beach in Malibu. While father and the children were walking back to the beach from the public restroom, father was attacked and seriously injured by a homeless person wielding a machete. Plaintiffs sued defendant and respondent the County of Los Angeles (County), and judgment in the County's favor was entered after the trial court granted the County's demurrer to the second amended complaint. On appeal, plaintiffs contend that the attacker's encampment, adjacent to an informal path between the beach and the restroom, is a "dangerous condition[] of public property" under Government Code section 835,[1] and that the County had a duty to remedy the dangerous condition and to warn beach visitors of that condition. We disagree, and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview

The incident triggering the current lawsuit took place at a public beach in Malibu, California, operated and managed by the County. Beachgoers can access the beach's public restrooms either by (1) exiting the beach and walking or driving on the highway less than half a mile to the restrooms, or (2) walking from the beach, along a well-worn path up the hillside to the same restrooms. An individual named Richard Franck and a

---

[1] All further statutory references are to the Government Code unless otherwise stated.

companion resided in an encampment hidden in the brush adjacent to the well-worn path. Neither the path nor the encampment adjacent to the path were created or maintained by the County; but we accept, at this pleading stage, that prior to the events in question the County had knowledge of the path, the adjacent encampment, and Franck and his companion's occupancy of the encampment.[2] There were no signs warning beachgoers of the hidden encampment or its occupants.

On the day of the attack, father and the two children walked from the beach back to the highway where their car was parked, drove down the highway to the restrooms, and parked there. After visiting the restrooms, father led the children along the well-worn path back to the beach. Walking along the path, father noticed someone throwing rocks at the children, and yelled at the person to stop. The person, later identified as Franck, jumped out of the bushes wielding a machete and attacked father, causing serious injuries. The altercation ended when Franck's companion came out of the bushes and convinced Franck to release the machete. The County later removed the encampment and its occupants from the area.

---

[2] We find it unnecessary to consider any of the information contained in the claims for damages plaintiffs presented to the county prior to filing suit, despite the County's request that we do so.

## B.    Initial Complaint

Plaintiffs filed a form complaint alleging claims based on negligence and premises liability against the County.[3]  The County filed an answer, and then a motion for judgment on the pleadings, arguing that third party criminal conduct was not a dangerous condition and the County had no duty to warn the public of the presence of a dangerous person.  The court granted the County's motion and gave plaintiffs 30 days to file an amended complaint.

## C.    First Amended Complaint

Plaintiffs' first amended complaint alleged claims for premises liability, willful failure to warn, maintenance of a nuisance, and loss of consortium.  The first amended complaint's factual allegations referred to the encampment as a "hidden homeless encampment" and alleged the County "had actual knowledge of the existence and location of the hidden homeless encampment for a sufficient length of time, and, in fact, allowed the hidden homeless encampment to remain on the Beach at this hidden location along the well-worn path where beachgoers would unexpectedly stumble upon the hidden encampment." Residents near the beach had reported to the County that Franck was attacking other beachgoers and claiming the beach belonged

---

[3] The initial complaint also named the City of Los Angeles and City of Malibu as defendants, but those parties were later dismissed without prejudice.

to him.  A few months earlier, Franck had been arrested after violently attacking a County sheriff on the same beach "but was then released back into the same community on the same Beach where he had been terrorizing beachgoers."  Regarding the attack on father, the complaint alleged that when father noticed someone throwing rocks, "[h]e yelled out to whoever was throwing the rocks to stop because they might hit his children.  Then a man suddenly jumped out of the bushes wielding a machete."  Two months after Franck attacked the father, plaintiffs learned that the County had disbanded the hidden homeless encampment and removed Franck from the beach.

**D.     Demurrer Sustained with Leave to Amend**

The trial court sustained the County's demurrer to the first amended complaint, and granted plaintiffs 30 days leave to amend.  The trial court reasoned that plaintiffs' dangerous condition claim was inadequate because they only alleged that the encampment was hidden and provided a place for unhoused people to live, but did not allege that a physical defect of the encampment had caused plaintiffs' injuries.

**E.     Second Amended Complaint**

Plaintiffs' second amended complaint alleged premises liability, willful failure to warn, and loss of consortium.  The allegations provided more detail about the encampment and the County's state of knowledge.  The complaint referred to the encampment as an "illegal encampment hidden within the brush directly adjacent to the well-worn path to the restroom facilities"

and alleged on information and belief that Franck and his companion stored at least one dangerous and lethal weapon within the encampment, and had resided there for more than two years. The complaint further alleged there was "no structure between the encampment and the well-worn path, nor any sign advising beach-goers that there was a hidden illegal encampment where homeless individuals with at least one lethal weapon had established their residence." Plaintiffs alleged on information and belief that the sheriff's department was responsible for inspecting the beach for safety and had 53 separate encounters with Franck and/or his companion during a two-and-a-half year period preceding the attack. On information and belief, the complaint also alleged the County "knew that Franck and his companion had established their residence on the Beach, that they had at least one dangerous and lethal weapon stored in the encampment, that they had a long history of violently attacking beach-goers claiming that portion of the Beach belonged to them," that the placement of the encampment adjacent to the pathway "constituted a danger which could be remedied by removing the illegal encampment," and that there was a high likelihood unsuspecting beachgoers would be attacked due to the dangerous condition.

The complaint described a number of encounters between law enforcement and Franck leading up to the attack on the father. These allegations were summarized in the trial court's December 27, 2023 order: "Five months before the incident, the County had determined that Franck's residence at the beach was illegal and told Franck he needed to leave the encampment. One month later, when a Sheriff's deputy again asked Franck to leave, Franck pulled a knife on the deputy. A month after that,

the County again told Franck to leave because his residence at the beach was illegal.  The following month, the County served a warrant for Franck's arrest because the County knew that he was a danger to beach-goers.  [¶] On August 18 and 26, 2021, Sheriff's deputies again told Franck to leave.  On August 27, 2023, the Sheriff's Department received a report that Franck was still living in his encampment."  Concerning the incident where Franck pulled a knife on the sheriff's deputy who asked him to leave, Franck later stated, "I only pulled out a knife because I was protecting my friend's property."

The amended allegations also provided additional detail about the attack on father.  When father and the children were returning to the beach along the well-worn path and father saw that someone was throwing rocks at the children, "a voice from the bushes shouted multiple times 'you don't belong here!' "  And father "yelled back 'hey, stop that, you're going to hit the kids!' "  When police arrived after the attack, "they arrested Franck who told the Sheriff who arrested him, 'I gotta protect my land!  I had to do what I had to do in order to protect my property!'  Franck had lived at that portion of the beach so long he believed it was his personal established residence."

## F.    Demurrer Sustained Without Leave to Amend

After a hearing on December 7, 2023, the trial court granted the County's demurrer to the second amended complaint without leave to amend.  After reviewing the allegations and the relevant statutory and case law, the court concluded that plaintiffs' allegations were insufficient as a matter of law.  We quote the most relevant portion of the court's analysis below.

"Like [p]laintiffs' first amended complaint, the second amended complaint alleges that Franck's hidden encampment was a dangerous condition of public property. . . .  The second amended complaint also alleges that the placement of the encampment adjacent to the well-worn path and the path itself constituted dangerous conditions. . . .  However, the only danger resulting from the encampment, its placement, or the path which the complaint identifies was the potential for bringing members of the public into contact with Franck.  Plaintiffs do not allege that a defect in the encampment, its placement, or the path caused [p]laintiffs' injuries."

"In short, [p]laintiffs have not pleaded facts which demonstrate that 'a condition of public property "create[d] a substantial risk of injury even when the property [was] used with due care . . . ." ' (See *Cordova* [*v. City of Angeles* (2015)] 61 Cal.4th [1099,] 1104.)  It was only because a third party—Franck—carried out harmful conduct on the property by attacking [father] and his children that [p]laintiffs suffered injuries.  Therefore, the County cannot be liable under Government Code section 835 for Franck's harmful conduct on the County's property.  (See *ibid.*)"

## DISCUSSION

In their briefing on appeal, plaintiffs succinctly characterize the parties' divergent views of this case when they state that that plaintiffs' theory of liability is about a "dangerous encampment," and not, as the County would claim, about a "dangerous person."  Plaintiffs argue that a physical defect is not required to find a dangerous condition, and that the County can

8

be liable for creating a dangerous condition through its property management decisions.  Plaintiffs also contend they have adequately alleged a cause of action based on the County's failure to warn of a dangerous condition.  The County takes the opposite view, and argues that plaintiffs' case fails because "a dangerous person on public property is not a dangerous condition of public property."

The operative complaint alleges the County "had a duty, under the circumstances, to erect some barrier or remove *the encampment, the weapon(s), and the violent individuals* for the protection of beach-goers who would be lawfully walking on the well-worn path to the restroom.  Failure to perform their duty increased the reasonably foreseeable risk that beach-goers would be attacked with weapon(s) by third parties illegally residing in the adjacent hidden encampment."  (Italics added.)  With these allegations in mind, we consider whether plaintiffs have adequately alleged a dangerous condition under section 835, or a failure to warn of such a dangerous condition.

## A.    Standard of Review

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense."  (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.)  We accept as true all material facts properly pled and matters which may be judicially noticed, but disregard contentions, deductions, or conclusions of fact or law.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  And "we give the complaint a

9

reasonable interpretation, reading it in context." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

When a demurrer is sustained without leave to amend, we examine whether there is a reasonable possibility that the defect can be cured by amendment. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) " 'The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] . . . [¶] To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." ' [Citation.] The showing can be made for the first time on appeal. [Citation.]" (*Hacala v. Bird Rides, Inc.* (2023) 90 Cal.App.5th 292, 304 (*Hacala*).)

## B.     Public Entity Premises Liability

### 1.     *Applicable law*

#### a.  Dangerous conditions of property

A government entity's liability on a tort claim is grounded solely in statute. (§ 815; *Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652 (*Tansavatdi*).) Here, plaintiffs' statutory theory of liability rests on section 835, which provides that a public entity is liable "for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and

10

that either:  [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under [s]ection 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  "Thus, section 835 expressly authorizes two different forms of dangerous conditions liability:  an act or omission by a government actor that *created* the dangerous condition (§ 835, subd. (a)); or, alternatively, failure 'to protect against' dangerous conditions of which the entity had notice (*id.*, subd. (b))."  (*Tansavatdi, supra*, 14 Cal.5th at p. 653.)

The term "[d]angerous condition" is statutorily defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (§ 830, subd. (a).)  "A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347–1348, (*Cerna*); see also *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 154 (*Bonanno*) [the location of a bus stop that required users to cross a hazardous uncontrolled intersection could constitute a dangerous condition]; *Hedayatzadeh v. City of Del Mar* (2020) 44 Cal.App.5th 555, 563–568 (*Hedayatzadeh*) [finding no dangerous condition when city property adjacent to railroad right-of-way did not have a barrier

11

to prevent members of the public from walking onto train tracks].)

"The existence of a dangerous condition is ordinarily a question of fact but 'can be decided as a matter of law if reasonable minds can come to only one conclusion.' [Citation.]" (*Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 993 (*Summerfield*).) "A claim alleging a dangerous condition may not rely on generalized allegations but must specify in what manner the condition constituted a dangerous condition." (*Id.* at p. 994.)

### b. Third party conduct and dangerous conditions

"[T]hird party conduct, by itself, unrelated to the condition of the property, does not constitute a 'dangerous condition' for which a public entity may be held liable." (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810 (*Peterson*); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1132, 1134 (*Zelig*) [courthouse shooting did not give rise to liability for dangerous condition, where allegations focused on number of entrances to courthouse and lack of security screening]; *Summerfield, supra*, 96 Cal.App.5th at p. 994 [no dangerous condition liability based on city's failure to take added precautions or install security cameras at park where shootings had occurred in the past].) However, "intervening criminal conduct cannot absolve the defendant of liability where [a] plaintiff alleges that defendants maintained the property in such a way so as to increase the risk of criminal activity." (*Peterson, supra*, 36 Cal.3d at pp. 805, 812 [dense, untrimmed foliage near a stairway was a dangerous condition, where college district was aware of past assaults using the same modus operandi of

jumping at the victim from behind the foliage, and had taken steps to protect students using the parking lot and stairway].)

"As the Supreme Court instructs us in *Zelig*, for purposes of deciding when a dangerous condition exists in cases involving third party conduct, it is necessary to address two elements. 'The first is whether it can be said the defect complained of describes a dangerous *physical* condition and second, whether the dangerous condition has a *causal relationship to the third party conduct* that actually injured the plaintiff.' [Citation.]" (*Summerfield, supra*, 96 Cal.App.5th at pp. 996–997.)

"[P]ublic liability lies under section 835 only when a feature of the public property has 'increased or intensified' the danger to users from third party conduct." (*Bonanno, supra*, 30 Cal.4th at p. 155.) "There must be some defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff." (*Summerfield, supra*, 96 Cal.App.5th at p. 994, citing *Zelig, supra*, 27 Cal.4th at pp. 1134–1140.) In other words, "[a] public entity may be liable for a dangerous condition of public property even where the immediate cause of plaintiff's injury is a third party's negligent or illegal act *if* some physical characteristic of the property exposes its users to increased danger from third party negligence or criminality. [Citations.]" (*Summerfield, supra*, 96 Cal.App.5th at p. 994; *Bonanno, supra*, 30 Cal.4th at pp. 152–155.) Importantly, a dangerous condition does not exist when allegations have "nothing to do with the physical *condition* of the property, or the misuse of it in any way, but relate only to 'the condition of persons on that property.' " (*Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 718–720 (*Rodriguez*) [district's notice of students and nonstudents

13

bringing concealed weapons onto campus and past incidents of violence did not allege a dangerous condition].)

### c. Police protection immunity

Section 845 provides statutory immunity for failing to provide police protection services, and the intent behind immunity is to protect budgetary and political decisions involved in hiring and deploying a police force. (See *Zelig, supra*, 27 Cal.4th at p. 1142 [immunity " 'was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation' "].) Immunity under section 845 can factor into the court's analysis of whether a public entity's maintenance decisions created or contributed to the existence of a dangerous condition on public property. When a bonfire in a natural cave ignited a wildfire that destroyed more than 50 homes, the homeowners alleged that the state "maintained its property in a dangerous condition by allowing easy and unrestricted access . . . to a parking lot within a quarter mile of the cave," and that the state had notice of prior late night parties and bonfires in the cave and its surrounding area. (*Avedon v. State of California* (2010) 186 Cal.App.4th 1336, 1339–1341.) The reviewing court concluded that an absence of barriers to prevent car access and parking near the cave was not a dangerous condition; while "more zealous efforts to reduce the risk [of illegal activity] would have required increased policing of the area," section 845 immunized public entities from liability for failure to provide police services. (*Id*. at pp. 1342–1343.) Similarly, courts have

14

found no dangerous condition where the public entity failed to keep third party criminal actors from entering public property. (See, e.g., *Zelig, supra*, 27 Cal.4th at p. 1132; *Rodriguez, supra*, 186 Cal.App.3d at p. 719.)

**2.**     ***Liability Based on County's Property Management Decisions***

Plaintiffs argue that the County "created" a dangerous condition through the following property management decisions: allowing an illegal and hidden encampment to exist adjacent to the only practical access path to the public restrooms near the beach, channeling visitors past the encampment by its property layout, and failing to address the conditions despite knowledge of the violent tendencies of the encampment's occupants.

a.  <u>Proximity of the encampment and the worn path</u>

Plaintiffs endeavor to make their case against the County by likening it to cases where a public entity's "use or general plan of operation" brought members of the public in proximity to certain hazards.  (See, e.g., *Bauman v. San Francisco* (1940) 42 Cal.App.2d 144 [liability for allowing baseball to be played in close proximity to sandbox where there were small children]; *Huff v. Compton City Grammar School District* (1928) 92 Cal.App. 44, 47 [mobile incinerator's placement on school grounds was a dangerous condition; "the burning of rubbish in the incinerator while little children were playing around it constituted negligence"]; *Dudum v. City of San Mateo* (1959) 167 Cal.App.2d 593, 597 [stop sign's placement where it was obscured

15

by tree growing on private property was a dangerous condition]; but see *Marsh v. City of Sacramento* (1954) 127 Cal.App.2d 721, 725 [hazardous ditch appeared after placement of sidewalk, but city's maintenance of the sidewalk constituted an invitation to the public to use it, exposing city to liability based on dangerous condition].)  We are not persuaded.

Recently, the court in *Hedayatzadeh, supra*, 44 Cal.App.5th 555, found no dangerous condition of public property where city property did not have a barrier to prevent members of the public from accessing adjacent property containing train tracks.  In affirming summary judgment for the city in a suit filed after a person was struck by a train, the *Hedayatzadeh* court explained that the role of proximity or the concept of adjacent property includes that a public entity can be "held liable for undertaking an *affirmative act*, such as deciding to locate a public facility in a certain place or providing a particular means of access to an adjacent hazard, that put users of the public property into danger from adjacent property." (*Hedayatzadeh, supra*, 44 Cal.App.5th at pp. 563–564.)  There are no allegations that the County took any such affirmative act here.  To the contrary, the encampment is plainly alleged to have been established by Franck and his companion; and the path is described in the complaint as "well-worn," and we can reasonably infer that it was created by beachgoers who did not want to take the longer route of exiting the beach and walking on the roadway.  The County did not "create" the dangerous condition as part of any general plan of operation or otherwise, because it did not affirmatively maintain either the informal pathway or the homeless encampment.  The authorities relied upon by plaintiffs are inapposite, as they

16

involve some affirmative conduct on the part of the public entity in placing either the amenity or the hazard.

Further, in *Bonanno*, the majority concluded that the location of a bus stop owned by a transit agency could constitute a dangerous condition where users of the stop had to cross a busy thoroughfare at an uncontrolled intersection. (*Bonanno, supra*, 30 Cal.4th at pp. 144, 148–155.) The court acknowledged that the statutory requirement of a dangerous condition is most plainly met "when public property is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself. [Citations.]" (*Id.* at pp. 148–149.) But a dangerous condition could also arise based on the design or location of an improvement, hazards present on adjoining property, or a characteristic of the property that exposes its users to increased danger from third party negligence or criminality. (*Id.* at pp. 149–154.) The court summed up its discussion by noting that two applicable points of law were "well established:  first, that the *location* of public property, by virtue of which users are subjected to hazards on adjacent property, may constitute a 'dangerous condition' under sections 830 and 835; second, that a physical condition of the public property that increases the risk of injury from *third party conduct* may be a 'dangerous condition' under the statutes." (*Bonanno*, at p. 154.) But importantly, when third party conduct is involved, the property itself must have some physical characteristic that increases the risk of injury from that conduct. (*Ibid.*; *Hacala, supra,* 90 Cal.App.5th at pp. 307–308 [allegations of improperly parked scooters did not adequately allege dangerous condition of property because there was no physical characteristic of the public property that increased the risk of third party negligence].)

Similarly, in *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434 (*Brenner*), the court rejected the theory that the volume and speed of vehicular traffic in combination with heavy pedestrian use created a dangerous condition. In affirming the trial court's sustaining of the city's demurrer, the appellate court noted that the plaintiff had made no allegation that some "physical characteristics" of the street such as "blind corners, obscured sightlines, elevation variances, or any other unusual condition . . . made the road unsafe when used by motorists and pedestrians exercising due care" and that the plaintiff had not cited to any authority "that a dangerous condition exists absent such factors." (*Id.* at pp. 440–441.) Plaintiffs make no allegations that the path or the encampment have physical characteristics that increase the risk of injury from third party conduct, and we disagree that their placement or proximity could be characterized as part of the County's affirmative use or general plan of operation.[4]

---

[4] Other cases cited by plaintiffs are distinguishable because the issue did not concern whether the allegedly dangerous condition caused a foreseeable increase in the risk of third party criminal activity, but rather focused on whether the a condition of property was dangerous in light of foreseeable first or third party negligence. (See, e.g.*, Holder v. City of Santa Ana* (1962) 205 Cal.App.2d 194, 199 [an unfilled sandbox adjacent to a tree that children might climb and fall out of could be considered a dangerous condition].)

b. The County's inaction despite knowledge of Franck's dangerousness

Plaintiffs' additional contention – that they have shown a dangerous condition through the County's knowledge of the violent tendencies of the occupants of the encampment, coupled with the County's failure to remove the encampment or place a barrier to protect beachgoers – also fails.

In *Hayes v. State of California* (1974) 11 Cal.3d 469, 471–473, two students who were attacked and beaten at night on a public beach owned and maintained by the university sought to amend their complaint to state a cause of action for failure to warn of a dangerous condition of property. The victims' allegations included that the university had "knowledge that undesirable persons frequented the beach, committing dangerous crimes there." (*Id.* at p. 471.) The Supreme Court affirmed the lower court's judgment of dismissal on demurrer, without leave to amend to add a claim under section 835, explaining that "courts have consistently refused to characterize harmful third party conduct as a dangerous condition – absent some concurrent contributing defect in the property itself." (*Id.* at p. 472.)

In *Zelig, supra*, 27 Cal.4th 1112, our Supreme Court addressed whether plaintiffs – the minor children of a woman shot and killed by her husband at a Los Angeles courthouse – could state a cause of action against the county under section 835. Plaintiffs alleged the dangerous condition included a lack of preventative measures that increased the likelihood of violence by allowing weapons to be brought into the courthouse, despite the county knowing of violent courthouse incidents. (*Id.* at p. 1124.) While recognizing the possibility that in some

19

circumstances a public entity might be held liable for the criminal acts of third persons, the court emphasized "that liability is imposed only when there is some defect in the property itself and a causal connection is established between the defect and the injury." (*Id.* at p. 1135.) The court found that plaintiffs could not state a claim based on a dangerous condition of property. Any contention that the county should have provided more screening "is a police function that has little or nothing to do with the physical condition of the property." (*Id.* at p. 1137.) And, with respect to the condition of the property: the risk of the husband attacking mother was as great outside the courthouse; the installation of physical barriers or closing entrances would not have mitigated the risks of an attack; and the plaintiffs' observations about the physical layout of corridors, escalators, and the maze-like design of the building were not causally connected to the shooting. (*Id.* at pp. 1137, 1140.)

Here, plaintiffs' allegations fail to show that there was some physical defect in the encampment itself or that there was any causal connection between such a defect and plaintiffs' injuries. Although plaintiffs allege that Franck and his companion "had at least one dangerous and lethal weapon stored in the encampment," there is nothing in the complaint's allegations to suggest that the weapon could not have readily been stored on their persons, or in the bushes near the encampment. Much as in *Zelig*, where changes to remedy any perceived defects in the physical condition of the courthouse could not have mitigated the husband's possession of a weapon, removal of the encampment here would not have precluded Franck and his companion from secreting weapons at the beach. Nor would constructing barriers between the encampment and

the path have prevented an attack along the path, or at the restrooms, or anywhere along the beach, as the entirety of the public beach property would have remained equally as accessible to Franck and his companion as it was to any other member of the public. (See, e.g., *Zelig, supra*, 27 Cal.4th at pp. 1139–1140, 1146 [rejecting plaintiff's argument that physical barriers could have prevented third party criminal activity]; *Avedon, supra*, 186 Cal.App.4th at pp. 1342–1344 [no duty to prevent third party wrongful conduct by installing barriers to prevent late night revelers from holding bonfires in park cave].)

The encampment itself did not have defects such that it was a dangerous condition within the meaning of 835; rather, the encampment was made dangerous by the individuals who were residing in it. In that sense, the current case is analogous to *Moncur v. City of Los Angeles* (1977) 68 Cal.App.3d 118, where the court found no dangerous condition liability for injuries caused when a third party placed a bomb in an airport locker outside the airport's security perimeter. The court reasoned that while an unreasonable risk of harm created by a combination of defect of property and acts of third parties could result in liability, "the courts have consistently refused to characterize harmful conduct on the part of a third party as a dangerous condition in the absence of some concurrent contributing defect in the property itself." (*Id*. at p. 123.)

Although plaintiffs resist the notion that this case has little to do with the encampment, and everything to do with Franck's dangerousness, the solution to the risks posed by Franck's dangerousness was a greater police presence. Accordingly, no valid cause of action under section 835 can be stated on these facts. (See *Gates v. Superior Court* (1995) 32 Cal.App.4th 481,

21

505–507 [reviewing cases finding no public entity liability for absence of police protection and concluding "[s]ection 845 is an absolute immunity from the duty to pay monetary damages when by its terms it applies to a discretionary policy determination concerning police deployment"]; *Cerna v. City of Oakland, supra*, 161 Cal.App.4th at p. 1352 ["Public entities are immune from liability for asserted failures to provide police and security services"].)

Plaintiffs also resist the conclusion that they need to show a defect in the property that is causally connected to their injuries by comparing the facts of their case to *Peterson, supra*, 36 Cal.3d 799, but as we discuss below, *Peterson* is inapposite. The plaintiff in *Peterson* was a female student who was assaulted along a stairway in a public community college campus parking lot, when an "unidentified male jumped from behind 'unreasonably thick and untrimmed foliage and trees' which adjoined the stairway and attempted to rape her. The assailant used a modus operandi which was similar to that used in previous attacks on the same stairway. The defendants were aware that other assaults of a similar nature had occurred in that area and had taken steps to protect students who used the parking lot and stairway." (*Peterson, supra*, 36 Cal.3d at p. 805.) The *Peterson* court concluded the plaintiff had alleged a dangerous condition of property pursuant to section 835 because the assailant took advantage of the untrimmed foliage to perpetrate his crime. (*Id.* at p. 812.)

The *Peterson* court stated: "The majority of cases which have construed [section 835 and related provisions] have concluded that third party conduct by itself, unrelated to the condition of the property, does not constitute a 'dangerous

22

condition' for which a public entity may be held liable. [Citations.] The cases so holding have relied primarily on policy considerations and the definition of a dangerous condition as a 'condition of *property*' for the conclusion that a defect in property is necessary in order to state a cause of action based on the wrongful conduct of third parties. Nothing in the provisions of section 835, however, specifically precludes a finding that a public entity may be under a duty, *given special circumstances*, to protect against harmful criminal conduct on its property." (*Peterson*, *supra*, 36 Cal.3d at pp. 810–811 (second italics added, fn. omitted).) The court then found such special circumstances were appropriately considered in the case before it, explaining: "In the closed environment of a school campus where students pay tuition and other fees in exchange for using the facilities, where they spend a significant portion of their time and may in fact live, they can reasonably expect that the premises will be free from physical defects and that school authorities will also exercise reasonable care to keep the campus free from conditions which increase the risk of crime." (*Id.* at p. 813.) The court concluded that the student victim was entitled to proceed with a claim under section 835, and to prove that the failure to warn, to trim the foliage, or to take other reasonable measures to protect her was the proximate cause of her injuries. (*Id.* at p. 815.)

Here, plaintiffs, who were members of the general public accessing a public beach, claim no special relationship with the County. Indeed, plaintiffs here were in much the same position as the victims in *Hayes*, *supra*, 11 Cal.3d 469. The *Peterson* court itself noted that the student victim before it was differently situated than the beachgoer plaintiffs in *Hayes*. (*Peterson, supra*, 36 Cal.3d at p. 813.) The *Peterson* court went on to explain that,

23

in finding no dangerous condition, the *Hayes* court had correctly considered the absence of a specific hazard in the use of beach property, and the policy that imposing a duty to warn the public against past criminal conduct on a public beach would effectively close the public area.  (*Id*. at pp. 813–814.)  We conclude that we are guided here by the majority of cases that reason section 835 does not permit liability on a public entity for the criminal acts of third parties unrelated to an identified defect in the condition of property, and we are not guided by the kinds of special circumstances at play in *Peterson*.

To the extent plaintiffs argue that removal of the encampment is the equivalent of trimming the foliage in *Peterson* in order to reduce the risk of third party criminal activity, we disagree.  Even were we to accept the proposition that County had the ability to remove the encampment before the attack (given that it did so after Franck had been taken into custody), that does not demonstrate that the encampment itself was a dangerous condition.  Plaintiffs do not sufficiently plead a claim for dangerous condition of public property simply based on the machete attack coupled with the existence of the encampment.  They need to do more than presuppose that the encampment was dangerous and then fault the County for not removing it.  (See *Summerfield, supra*, 96 Cal.App.5th at p. 997 [finding absence of surveillance cameras in dark parking lot where shooting occurred was not a dangerous condition].)

## C.    **Failure to Warn**

Plaintiffs contend the county had notice of the dangerous condition and the ability to warn beachgoers of the "hidden

24

danger," comparing the county's repeated encounters with Franck to the prior crimes at issue in *Peterson*, where the campus had notice of other assaults near the parking lot.

We disagree that the County had a duty to warn beachgoers for many of the same reasons discussed above. (*Hayes, supra*, 11 Cal.3d at p. 472 ["public awareness of the prevalence of crime and policy factors militate against imposing a governmental duty to warn"; *Summerfield, supra*, 96 Cal.App.5th at p. 998 ["case law provides a public entity has no duty to warn against criminal conduct"].) There are solid policy reasons behind not interpreting section 835 to impose upon public entities a duty to warn of the risks of possible criminal conduct. As the Supreme Court observed in *Hayes*, "to the extent warning of past criminal conduct might serve a beneficial purpose, it—unlike cautioning against a specific hazard in the use of property— admonishes against any use of the property whatever, thus effectively closing the area. But determining and regulating the *use* of public property are better left to legislative and administrative bodies, rather than to the judiciary. [¶] Finally, the disquieting spectre of warning signs hanging in areas where crime has occurred—not unlike the leper's bell—manifests the unreasonableness of the duty sought to be imposed by plaintiffs on their government. (*Hayes, supra*, 11 Cal.3d at p. 473, fn. omitted.)

## D. Denial of Leave to Amend

Plaintiffs contend the trial court abused its discretion in denying leave to amend. They argue they could amend the complaint to clarify the physical aspects of the dangerous

condition, including how overgrown brush and deliberate concealment created a trap-like situation that prevented beach-goers from perceiving the danger until it was too late. They also assert they could allege additional facts about prior violent incidents involving Franck and available property management safety measures the county could have taken.

"Generally, leave to amend is warranted when the complaint is in some way defective, but plaintiff has shown in what manner the complaint can be amended and ' "how that amendment will change the legal effect of [the] pleading." ' (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) Appellants shoulder the burden to show a reasonable possibility the defect in the [SAC] can be cured by amendment; if it can, the trial court abused its discretion in sustaining the demurrer without leave to amend. [Citation.]" (*Summerfield, supra*, 96 Cal.App.5th at pp. 999–1000.)

We reject plaintiffs' arguments for several reasons. First, plaintiffs waited until the reply brief to even argue that they should have been given leave to amend, and they do not have good cause for doing so. (See *Shimmon v. Franchise Tax Bd.* (2010) 189 Cal.App.4th 688, 694, fn. 3 ["arguments raised for the first time in the reply brief will not be considered unless good cause is shown for failing to raise them earlier"].) We further find no abuse of discretion, not only because plaintiffs have already had two opportunities to clarify the factual bases for their claims, but also because plaintiffs have not shown how their proposed amendments will change the legal effect of their pleading.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to defendant and respondent County of Los Angeles.

NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


BAKER, J.